[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 419.]

DEROLPH ET AL., APPELLANTS, V. THE STATE OF OHIO ET AL., APPELLEES.

[Cite as *DeRolph v. State*, 1997-Ohio-87.]

*Motion for reconsideration and clarification of the School Funding Decision— Clarification granted.*

(No. 95-2066—Submitted April 15,1997—April 25, 1997.)

ON MOTION FOR RECONSIDERATION AND CLARIFICATION.[1]

―――――――――――

*Bricker & Eckler, Nicholas A. Pittner, John F. Birath, Jr., Sue W. Yount, Michael D. Smith* and *Susan B. Greenberger,* for appellants.

*Betty D. Montgomery,* Attorney General, *Jeffrey S. Sutton,* State Solicitor, *Christopher M. Culley* and *Sharon A. Jennings,* Assistant Attorneys General, for appellees.

*Dinsmore & Shohl, Mark A. VanderLaan, Joel S. Taylor* and *William M. Mattes,* Special Counsel for appellees State Superintendent of Public Instruction and State Department of Education.

―――――――――――

*Per Curiam.*

{¶ 1} Upon consideration of appellees' "Motion for Reconsideration and Clarification," we find that appellees' motion raises three questions:

1.  May local property taxes be used as any part of a funding solution?

2.  Do debt obligations for school funding incurred before March 24, 1998, pursuant to state law, remain valid even though repayment provisions extend beyond March 24, 1998?

―――――――――――

1.  The decision on the merits in this case may be found at 78 Ohio St.3d ___, ___ N.E.2d ___.

3. Should this court retain exclusive jurisdiction of the case to review all remedial legislation enacted in response to the court's decision?

I

{¶ 2} May local property taxes be used as any part of a funding solution? The answer is "Yes," but property taxes can no longer be the primary means of providing the finances for a thorough and efficient system of schools.

II

{¶ 3} Do debt obligations for school funding incurred before March 24, 1998, pursuant to state law, remain valid even though repayment provisions extend beyond March 24, 1998? The answer is "Yes."

{¶ 4} Much has been said and published about our decision. With all that has been said, it seems to us that the appellees' motion for reconsideration now before us and its memorandum in support of the motion further support our decision. Specifically, appellees state that "[a] significant amount of borrowing is planned during this period, including $100-200 million that various school districts anticipate borrowing prior to June 30, 1997, *in order to meet their operating expenses (including salaries)*. Among these school districts is the Cleveland public schools, which had anticipated completing *a significant debt restructuring* by early May 1997." (Emphasis added.) In other words, some school districts need to borrow money to continue to operate and at least one (Cleveland) needs to borrow additional money to help pay off past borrowing.

{¶ 5} Addressing the question itself, there are two answers. First, the status quo exists for a year. Second, an agreement by one party to borrow and repay money and another party to lend the money results in a contract. As we stated in *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467, 468, "[t]he general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. *The one*

*general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision."* (Emphasis added.) Subsequently, in *Wendell v. AmeriTrust Co., N.A.* (1994), 69 Ohio St.3d 74, 77, 630 N.E.2d 368, 371, this court said that "[i]n *Peerless Elec. Co. v. Bowers * * *,* we held that, generally, a decision of this court overruling a previous decision is to be applied retrospectively with an exception for contractual or vested rights that have arisen under the previous decision. *This reasoning applies with similar force when the court's decision strikes down a statute as unconstitutional."* (Emphasis added.)

III

{¶ 6} Should this court retain exclusive jurisdiction of the case to review all remedial legislation enacted in response to the court's decision? Our answer is "No."

{¶ 7} Given the separate powers entrusted to the three coordinate branches of government, both this court and the trial court recognize that it is not the function of the judiciary to supervise or participate in the legislative and executive process. We accord respect to the coordinate branches of government, and we have full faith and trust that they will act to remedy the disparate effects of the current statutory method for raising and distributing funding for education. The creating of a constitutional system for financing elementary and secondary public education in Ohio is not only a proper function of the General Assembly, it is also expressly mandated by the Ohio Constitution.

{¶ 8} Conversely, it is the role of the courts, pursuant to the Ohio Constitution, to determine the constitutional validity of the system of funding and maintaining the public schools in Ohio. It is now up to the General Assembly to devise a system of funding which will be in compliance with our Constitution.

{¶ 9} Our decision to remand this matter is a recognition of the unique role of trial courts as triers of fact and gatherers of evidence. Our remand to the trial

3

court is to provide a proper venue for the parties, if necessary and requested by any party, to present all evidence concerning the final enacted remedy, including measures taken since the record in this case closed and further enactments made in response to our decision.

{¶ 10} It would then be the trial judge's responsibility to rule on the constitutionality of the enacted legislation and to render an opinion. Any party could then appeal that decision directly to this court for final determination.

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

COOK, J., dissents.

_____

**MOYER, C.J., concurring in part and dissenting in part.**

{¶ 11} I concur in the judicious disposition of the two points of clarification requested by the defendants.

{¶ 12} With respect to the third issue raised in the motion, for clarification and reconsideration, I dissent from the decision of the majority overruling the defendant's motion for reconsideration.

{¶ 13} I concur in the dissent of Justice Cook to the extent that it suggests that the procedure crafted by the majority is highly unusual.

{¶ 14} A review of sixteen other state Supreme Court decisions that have declared their systems for funding public education unconstitutional reveals that a majority of those decisions remanded the case to a trial court. However, it is those states that have had the most difficulty producing a final plan that met the Supreme Court's opinion of constitutionality. For example, in New Jersey the issue has been through the courts for a period of twenty years and is now again pending in the New Jersey Supreme Court. Similar experiences, though not as dramatic, have occurred in Arizona, Arkansas, California, New Hampshire and Texas. In each of these states,

either the final public school funding plan is not yet approved by the Supreme Court of the state after several years of litigation after remand or the plan has been approved only after several years of litigation.

{¶ 15} Typically, when a Supreme Court declares a legislative act to be unconstitutional it does not order the legislative body to enact new legislation. Nor does it remand the case to a trial court with an order to retain jurisdiction over the consequent act of the legislative authority, including jurisdiction to rule upon the constitutionality of the new legislation. That would be my preference for a disposition of this case. But this case is different.

{¶ 16} A majority of this court, as the Supreme Courts of other states, has ordered the legislative branch of our state government to adopt legislation that will remedy the law that has been declared unconstitutional. Were I in the majority, I would not vote to remand this case to the trial court, not because of any lack of confidence in the ability of the trial court to provide a venue for the gathering of evidence, but because the purpose of such a remand would be better served by this court's retention of jurisdiction.

{¶ 17} In view of the majority decision declaring the laws relating to the funding of Ohio's public schools to be unconstitutional and ordering the General Assembly to enact a new constitutional plan within a year, I submit that the most expeditious means of removing the uncertainty regarding the constitutionality of the new plan is for this court to issue an order retaining jurisdiction in this court. If it proves necessary to provide a forum for the submission of evidence or to take further action at the expiration of the twelve-month stay, we have the authority to appoint a special master or issue other orders as might be appropriate. Such a disposition has precedent in the case in *Helena Elementary School Dist. v. State* (1989), 236 Mont. 44, 769 P.2d 684, in which the Supreme Court of Montana retained jurisdiction in an educational funding case.

**{¶ 18}** Moreover, the writers of a highly respected treatise have observed as follows:

"*** Power to deal with the issues presented on appeal inherently includes authority to enforce the court's decision or to regulate the course of further proceedings required to reach an effective decision. *** The questions arising from retained jurisdiction go more to the wise exercise of this power than its existence.***

"*** If the need for enforcement does arise, the [appellate court] is in an awkward position. Appellate procedure is not geared to factfinding ***. It is tempting to think that provisions should be made for enforcing [appellate] judgments in the [trial] courts, but this temptation has been rightly resisted. *** [C]ompelling reasons counsel against [trial] court enforcement. In principle, reliance on a different court for enforcement could undercut the control of the [appellate court] over its own judgment.***

"The ordinary response to the difficulties presented by proceedings in [an appellate court] to enforce its own judgment is to appoint a special master. The most common practice has been to adopt the Civil Rules by analogy to govern proceedings before the master, and to review findings of fact only for clear error." 16 Wright, Miller & Cooper, Federal Practice & Procedure (1996) 677-699, Section 3937.1

**{¶ 19}** Any retention of jurisdiction should be only in this court in recognition of the fact that uncertainty will envelop all aspects of public school funding in our state until the day this court deems a new funding system to be constitutional. The motion for clarification and reconsideration filed by the defendants and other well-publicized activities of those who will ultimately be responsible for adopting a new funding plan leave me with no doubt that those persons are acting responsibly. Even those who disagree with the judgment of the court recognize that it is their constitutional duty to respond constructively to it. If the parties affected by the decision of this court act responsibly and expeditiously to comply with the order of the court, we have a corresponding duty, in this extraordinary case, to provide a

procedure by which this court can, as expeditiously as possible, determine whether the parties have complied with the order of the March 24, 1997. That we can do if we retain jurisdiction with no remand to the trial court.

_____

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 20} The majority has spoken, and *DeRolph* is now the decision of this court. Therefore, I believe all justices can participate fully in deciding all subsequent motions filed in *DeRolph*.

{¶ 21} I concur in the conclusions reached by the majority on the motion for clarification as to the continued viability of property tax as a *source* of funding, as well as the contractual validity of any loans made until March 24, 1998, when the stay expires.

{¶ 22} However, I join in Justice Cook's and Chief Justice Moyer's dissents as to the motion to reconsider, believing strongly, as Justice Cook points out, that the judiciary's role in this matter is complete and that, as with all other legislation declared unconstitutional by this court, we must await new challenges to the new legislation. But if there is to be continuing jurisdiction, we should, as suggested by Chief Justice Moyer, retain jurisdiction in this court to review the remedial legislation upon the expiration of the stay, although I still question what authority we have to play such an unprecedented role. However, since this court is taking an activist role, and has ordered the legislature to remedy the situation, an unprecedented action to my knowledge and research, we should avert years of litigation by continuing our direct supervision of this case and answering questions such as those just presented as they arise, when it is appropriate to do so, by a majority vote or through a master commissioner.

{¶ 23} But I stress that my preferred course, as we do in all other cases where a statute is declared unconstitutional, is to end our involvement and let the other branches of government, the legislative and executive, remedy the problem.

If all parties work together for the good of our children's future, we may set a new precedent as a state that has *no* subsequent litigation and no further need for our services.  We can only hope.

{¶ 24} Therefore, I respectfully dissent from the remand as redefined by the majority opinion.

_____

**COOK, J., dissenting.**

{¶ 25} On the motion for reconsideration, I would modify the order granting the trial judge plenary and continuing jurisdiction over the matter by disposing altogether with any continuing jurisdiction.

{¶ 26} This case originated as a declaratory judgment asking that the statutes supporting the funding of education be declared unconstitutional as applied to plaintiffs for failing to be "thorough and efficient."  The majority has entered a judgment to that effect.  There remains nothing more for this, or any other, court to do.

{¶ 27} There is no case or controversy pending before the trial judge to decide.   No issue remains to be retried.  The remand (*DeRolph II)* does not direct the court to answer unresolved issues from *DeRolph I.*   No evidence gathering or fact finding is necessary on the issues as presented to us by the appeal; this court has already stricken the statutes.  Thus, the usual reasons for remanding a case do not exist here.

{¶ 28} It is a bizarre procedure for any appellate court to remand a case for a review of facts arising not only after the complaint was filed but after the appeals are over.  Moreover, the complaint raised an "as applied" constitutional challenge, but the remand seems to require a review by the trial court of legislation, enacted under an unprecedented mandate, as a "facial" challenge.  Add to all of this variance from the tenets of appellate review, the dispensation from the Ohio Constitution in

skipping the court of appeals on the path back to this court. See Section 3(B)(2), Article IV, Ohio Constitution; R.C. 2501.02.

{¶ 29} If the majority's concern is enforcing its judgment, then, upon the enactment of new laws for school funding, *new* challenges may be brought. In fact, given the majority holding that the *courts* will be the branch of government that determines the ever-changing concept of what amounts to a thorough and efficient system of schools, we can be sure that the constitutionality of the funding of schools will be judicially reviewed over and over again.

{¶ 30} The remand, broad or limited, seems to be a vain act. Indeed, the trial judge to whom the court is remanding the case revealed a wide-ranging view of what he would like to see the new system provide. This view included twelve standards for "adequate educational opportunities," among them "sufficient support and guidance so that every child feels a sense of self-worth and ability to achieve, and so that every student is encouraged to live up to his or her full potential." If the majority is remanding for the trial judge to pass upon the sufficiency of new legislation, and that judge has already opined in great detail as to what he would adjudge sufficient, this court might as well review the trial judge's model at this juncture.[2]

---

2. We note that the twelve enumerated platitudes that apparently form part of the trial court's equitable decree ordering the state to provide a "constitutionally acceptable system of school funding" are unenforceable. Civ.R. 65(D) requires that "every order granting an injunction * * * shall be specific in terms; shall describe in reasonable detail * * * the act or acts sought to be restrained * * *." The United States Supreme Court noted in regard to the identical requirements in the federal Civil Rule, "[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard* (1974), 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661, 664. "The judicial contempt power," that court has noted, "is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one." *Internatl. Longshoremen's Assn. v. Philadelphia Marine Trade Assn.* (1967), 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236, 245.

Thus, the trial court's injunction, containing only abstract conclusions that sound more like educational philosophy than judicial specificity, falls far short of the requirements of Civ.R.65 (D).

**{¶ 31}** Otherwise, the questions remain, what *precisely* is the trial judge to do on remand?  What *precisely* is the point of the remand?  Why the need to retain jurisdiction <u>other</u> than to dictate a legislative response?

**{¶ 32}** Does the majority envision the two other autonomous branches of government attending hearings before a trial judge?  That is unprecedented in my experience.    Is there not something very offensive to our basic knowledge of American government in having representatives of the legislative and executive branches reporting to a common pleas court judge on the enactment of new laws—new *tax* laws, no less?

**{¶ 33}** The courts are not in the business of making new laws.  In a climate of finite resources,  the General Assembly, with its function of reaching decisions through compromise and consideration of popular opinion, has the greatest legitimacy in making budget decisions that require a choice among priorities.  The General Assembly acts at the behest and the will of the people, not of the courts.  Unless the other branches of government are to be totally subordinate to the judiciary, we cannot direct the General Assembly in the performance of its legislative duties.

**{¶ 34}** Since "thorough and efficient" is not a judicially determinable standard, the effort by the General Assembly to meet it creates an untenable situation.  To further complicate the ambiguity by interposing an individual, in an undefined role, is ill-advised. If the majority is unwilling to acknowledge that this case is over, this court should at most retain jurisdiction itself, since only this court should answer the inevitable disputes about what *DeRolph I* means.

**{¶ 35}** As for the motion for clarification, my fundamental disagreement with the majority decision precludes my participation in clarifying it.

_____