[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 480.]

THE STATE EX REL. TAFT, SECY. OF STATE, *v.* FRANKLIN COUNTY COURT OF
COMMON PLEAS ET AL.

[Cite as *State ex rel. Taft v. Franklin Cty. Court of Common Pleas*,
**1998-Ohio-333.**]

*Schools—Taxation—Am.Sub.H.B. No. 697 enacting R.C. 5739.029(A) and
5741.024, imposing sales, storage, use, consumption, and service taxes
subject to approval of a majority of the state's electors at an election to
be held May 5, 1998, with one-half of the tax proceeds to be used for
schools, does not violate Section 26, Article II of the Ohio Constitution.*

(No. 98-364—Submitted March 24, 1998—Decided April 3, 1998.)

———————————

{¶ 1} On February 17, 1998, and in response to our decision in *DeRolph v.
State* (1997), 78 Ohio St.3d 193, 677 N.E.2d 733, the General Assembly enacted
Am.Sub.H.B. No. 697. The legislation enacts R.C. 5739.029(A) and 5741.024,
which impose sales, storage, use, consumption, and service taxes subject to the
approval of a majority of the state's electors at an election to be held May 5, 1998.
It further directs that one-half of the tax proceeds be used for schools.

{¶ 2} On February 19, 1998, respondent David P. Zanotti, a resident,
registered voter, and taxpayer of the state, filed a complaint in respondent Franklin
County Common Pleas Court against Secretary of State Bob Taft, who is required
by the Act to take certain actions in connection with implementation of the election.
In his complaint, as subsequently amended, Zanotti requested that the common
pleas court declare that Am.Sub.H.B. No. 697 is unconstitutional and enjoin Taft
from submitting the statewide tax proposal to the electorate.

{¶ 3} At the request of Secretary of State Taft, we ordered the common
pleas court and Judge Richard S. Sheward not to proceed further with Zanotti's

case, ordered the transfer of Zanotti's case to this court, and set an expedited schedule for the submission of evidence and filing of briefs on the issue of whether Am.Sub.H.B. No. 697 is unconstitutional. We also granted Zanotti's and the *DeRolph* plaintiffs' motions to intervene as respondents.

{¶ 4} The cause is now before the court for final determination.

_____

*Betty D. Montgomery*, Attorney General, *Jeffrey S. Sutton*, State Solicitor, *Judith L. French* and *David M. Gormley*, Assistant Attorneys General, for relator.

*McTigue & Brooks* and *Donald J. McTigue*, for intervening respondent, David P. Zanotti.

*Bricker & Eckler LLP*, *Nicholas A. Pittner, John F. Birath, Jr., Sue W. Yount,* and *Susan B. Greenberger*, for intervening respondents, the *DeRolph* plaintiffs.

_____

*Per Curiam.*

I

Constitutionality; General Considerations

{¶ 5} As with any constitutional challenge, general precepts must guide our analysis.

{¶ 6} "The first step in determining the meaning of a constitutional provision is to look at the language of the provision itself. Where the meaning of a provision is clear on its face, we will not look beyond the provision in an attempt to divine what the drafters intended it to mean." *State ex rel. Maurer v. Sheward* (1994), 71 Ohio St.3d 513, 520-521, 644 N.E.2d 369, 375. Words used in the Constitution that are not defined therein must be taken in their usual, normal, or customary meaning. *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 584, 651 N.E.2d 995, 998; R.C. 1.42.

**{¶ 7}** We recognize that " '[a]ll legislative enactments enjoy a presumption of constitutionality,' and 'the courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional.' " *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1996), 77 Ohio St.3d 338, 345-346, 673 N.E.2d 1351, 1357, quoting *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 151, 446 N.E.2d 449, 450. Courts have a duty to liberally construe statutes to avoid constitutional infirmities. *Hughes v. Ohio Bur. of Motor Vehicles* (1997), 79 Ohio St.3d 305, 307, 681 N.E.2d 430, 432.

**{¶ 8}** Moreover, courts should be very reluctant to interfere with elections, except to enforce rights or mandatory or ministerial duties as required by law. See *In re Election of Nov. 6, 1990 for Office of Atty. Gen. of Ohio* (1991), 58 Ohio St.3d 103, 104, 569 N.E.2d 447, 449; *MacDonald v. Bernard* (1982), 1 Ohio St.3d 85, 86, 1 OBR 122, 123, 438 N.E.2d 410, 411-412.

II

Section 26, Article II, Ohio Constitution

**{¶ 9}** Zanotti contends that Am.Sub.H.B. No. 697 violates Section 26, Article II of the Ohio Constitution by conditioning the effectiveness of the statutes in Section 1 of Am.Sub.H.B. No. 697[1] upon the approval of the electors of the state.

**{¶ 10}** Section 26, Article II of the Ohio Constitution provides:

"All laws, of a general nature, shall have a uniform operation throughout the State; *nor, shall any act, except such as relates to public schools, be passed, to take effect upon the approval of any other authority than the General Assembly*, except, as otherwise provided in this constitution." (Emphasis added.)

---

1. Section 2 of Am.Sub.H.B. No. 697 provides:

"Section 1 of this act shall take effect only if approved by a majority of the electors voting thereon, as provided in Section 3 of this act, as permitted by Section 26 of Article II, Ohio Constitution, because this act relates to public schools. If Section 1 of this act is not submitted to the electors at a special election on May 5, 1998, or if Section 1 of this act is not approved by a majority of the electors voting on the section at that special election, Sections 1, 2, 3, 4, and 5 of this act expire."

{¶ 11} Zanotti claims that Am.Sub.H.B. No. 697, in enacting taxes that take effect upon the approval of the electors of the state, violates this constitutional provision. We disagree.

{¶ 12} Section 26, Article II creates a general rule that the effectiveness of legislative acts cannot be made dependent upon the approval of any authority other than the General Assembly. The plain language of Section 26 provides an exception to the general rule, however, stating that the rule does not apply to any act that relates to "public schools."

{¶ 13} This exception is applicable to Am.Sub.H.B. No. 697. Clearly Am.Sub.H.B. No. 697 "relates to public schools," as it raises revenue to fund public schools.

{¶ 14} Zanotti argues that the "public schools" exception contained in Section 26, Article II should be interpreted as applying only where the "other authority" at issue is a local, as opposed to a statewide, authority. His argument is founded on his interpretation of speeches made by drafters of Section 26, Article II. However "imprecise speeches by individual drafters" of the Constitution do not "give courts *carte blanche* to ignore the plain language of a constitutional provision." *State ex rel. Maurer*, 71 Ohio St.3d at 522, 644 N.E.2d at 376.

{¶ 15} Moreover, if the delegates had intended that the "other authority" referred to in Section 26, Article II be limited to *local* authorities, they would have so provided. They did not. We should not add words that the drafters omitted. See *Lynch v. Gallia Cty. Bd. of Commrs.* (1997), 79 Ohio St.3d 251, 254, 680 N.E.2d 1222, 1224.

{¶ 16} Zanotti next contends that Section 26, Article II of the Ohio Constitution prohibits the General Assembly from conditioning only a portion of an act to take effect upon approval by another authority. However, as we have discussed, the general prohibition in Section 26, Article II against enactment of legislation whose effectiveness is dependent upon approval of another authority

4

does not apply to legislation relating to public schools. Because Am.Sub.H.B. No. 697 fits within the exception, Section 26, Article II may be read, for purposes of this cause, as if it said only that "[a]ll laws, of a general nature, shall have a uniform operation throughout the State * * *, except as otherwise provided in this constitution." So read, Am.Sub.H.B. No. 697 is wholly consistent with both the language of Section 26, Article II, and its general purpose, which is to prohibit enactment of special or local legislation. See *Austintown Twp. Bd. of Trustees v. Tracy* (1996), 76 Ohio St.3d 353, 356, 667 N.E.2d 1174, 1177.

{¶ 17} Accordingly, Am.Sub.H.B. No. 697 does not violate Section 26, Article II of the Ohio Constitution.

III

Sections 1c and 1d, Article II

{¶ 18} Zanotti contends that Am.Sub.H.B. No. 697 is unconstitutional because it is violative of Sections 1c and 1d, Article II of the Ohio Constitution.

{¶ 19} Section 1c, Article II confers a right of referendum against most laws by providing that "[n]o law passed by the general assembly shall go into effect until ninety days after it shall have been filed by the governor in the office of the secretary of state, except as herein provided."

{¶ 20} Section 1d, Article II of the Ohio Constitution provides:

"Laws providing for tax levies, appropriations for the current expenses of the state government and state institutions, and emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect. * * * The laws mentioned in this section shall not be subject to the referendum."

{¶ 21} We do not find Am.Sub.H.B. No. 697 to be in contravention of these constitutional provisions.

{¶ 22} Zanotti contends that Sections 1 and 2 of the Act are unconstitutional under Section 1d, Article II of the Ohio Constitution because they provide that the

proposed taxes in Section 1 do not take immediate effect but are instead subject to approval by state electors. However, "[t]he express [constitutional] language, 'laws providing for tax levies,' is limited to an actual self-executing levy of taxes, and is not synonymous with laws 'relating' to tax levies, or 'pertaining' to tax levies, or 'concerning' tax levies * * *." *State ex rel. Keller v. Forney* (1923), 108 Ohio St. 463, 141 N.E. 16, paragraph three of the syllabus. Section 1 and the timing provision in Section 2 related to Section 1 of Am.Sub. H.B. No. 697 are not self-executing laws providing for tax levies. Rather, they are laws relating to tax levies. The Act does not levy taxes—it merely authorizes the electorate to determine whether the proposed taxes should be levied. Accordingly, Section 1d, Article II is not applicable, nor is it violated.

{¶ 23} Zanotti finally challenges the constitutionality of Sections 2, 3, and 5 of the Act, based on his claim that these sections violate Sections 1c and 1d, Article II of the Ohio Constitution in that the Act provides that they shall be effective immediately. But, as noted previously, Section 1d, Article II permits certain laws, including "appropriations for the current expenses of the state government and state institutions," to take immediate effect and not be subject to the referendum. The provision that Sections 2, 3, and 5 of Am.Sub.H.B. No. 697 take immediate effect comports with the Constitution and R.C. 1.471(C) because implementation of the statewide election is dependent upon the appropriation in Section 4 of Am.Sub.H.B. No. 697. See R.C. 1.471 ("A codified or uncodified section of law contained in an act that contains an appropriation for current expenses is not subject to the referendum and goes into immediate effect if * * * [C] Implementation of the section depends upon an appropriation for current expenses that is contained in the act.").

IV

Conclusion

**{¶ 24}** Based on the foregoing, Zanotti has not overcome either the strong presumption of constitutionality of Am.Sub.H.B. No. 697 or our general reluctance to interfere with elections. *Purdy*, 77 Ohio St.3d 338, 673 N.E.2d 1351, and *MacDonald*, 1 Ohio St.3d 85, 1 OBR 122, 438 N.E.2d 410. The May 5, 1998 special election provided by Am.Sub.H.B. No. 697 should proceed.[2]

*Judgment accordingly.*

MOYER, C.J., F.E. SWEENEY and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., concur separately.

DOUGLAS and RESNICK, JJ., concur in judgment only.

─────────────

**COOK, J., concurring.**

**{¶ 25}** I renew my objections to this court's extra-constitutional exercise of jurisdiction in this action as previously explained in my dissenting opinion to *State ex rel. Taft v. Franklin Cty. Common Pleas Court* (1998), 81 Ohio St.3d 1244, 691 N.E.2d 677. Nevertheless, because a majority of this court have seen fit to bring this controversy before the court on the merits, and because I agree that Zanotti has failed to demonstrate that Am.Sub.H.B. No. 697 is unconstitutional, I concur in the majority's merit determinations.

LUNDBERG STRATTON, J., concurs in the foregoing concurring opinion.

─────────────

**DOUGLAS, J., concurring in judgment only.**

**{¶ 26}** I concur in the judgment of the majority. I write separately to make several points, including the point that the case is now before us on the merits.

─────────────

2. Nor need we decide in this case whether Am.Sub.H.B. No. 697 and the rest of the legislative response satisfied our mandate in *DeRolph*.

**{¶ 27}** This case is no longer a case in prohibition and mandamus. Those determinations are over. The case is now before us on the merits and, in effect, calls for a declaratory judgment as to the constitutionality of certain sections of Am.Sub.H.B. No. 697.[3]

**{¶ 28}** This court, in its original entry of March 12, 1998,[4] indicated that Judge Sheward, the trial judge in the case that was then pending in the Court of Common Pleas of Franklin County (*i.e.*, *Zanotti*) was not to proceed further. 81 Ohio St.3d 1244, 691 N.E.2d 677. A majority of this court declined to grant a writ of prohibition and, thus, that matter (the prohibition action) is not before us. However, this court did grant a peremptory writ of mandamus, so that matter (the mandamus action) is, likewise, not before us. Thus, we are now called upon to decide whether certain provisions of Am.Sub.H.B. No. 697 are constitutional as they relate to, among other things, Section 26, Article II of the Ohio Constitution. I concur in declaring that as to Section 26, Article II of the Ohio Constitution, the specific sections of Am.Sub.H.B. No. 697 being challenged meet constitutional muster. The election in question should proceed.

**{¶ 29}** I also agree with the majority's conclusion that the challenged provisions of Am.Sub.H.B. No. 697 do not violate Sections 1c and 1d, Article II of the Ohio Constitution. Since Zanotti has properly raised the issue and the question is clearly before us for consideration, it is proper that we decide the question.

**{¶ 30}** Zanotti contends that Sections 1 and 2 of Am.Sub.H.B. No. 697 are unconstitutional under Section 1d, Article II of the Ohio Constitution. Section 1d,

---

3. Zanotti, contrary to the statements of the majority, did not challenge all of Am.Sub.H.B. No. 697 as unconstitutional. Zanotti's complaint challenged only certain provisions of the bill.

4. The majority says that "[a]t the request of Secretary of State Taft, we ordered the common pleas court and Judge Richard S. Sheward not to proceed further with Zanotti's case * * *." That sounds like the Secretary of State called us on the telephone. In fact, the Secretary of State, through the Attorney General, properly filed in this court an original action explicitly seeking writs of prohibition and mandamus.

Article II of the Ohio Constitution provides: "Laws providing for tax levies, appropriations for the current expenses of the state government and state institutions, and emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect. * * * The laws mentioned in this section shall not be subject to the referendum." Zanotti contends that the taxes proposed in Section 1 of Am.Sub.H.B. No. 697 do not take immediate effect because the General Assembly made them subject to approval by state electors. However, Section 1 of Am.Sub.H.B. No. 697 and the timing provision of Section 2 of the Act are laws *relating* to tax levies rather than laws *providing* for tax levies. The questioned provisions of Am.Sub.H.B. No. 697 only present the issue of electorate authorization regarding the proposed taxes.

{¶ 31} Zanotti also challenges the constitutionality of Sections 2, 3, and 5 of the Act because these sections take immediate effect and, thus, it is argued, they violate Sections 1c and 1d, Article II of the Ohio Constitution. However, I respectfully disagree with the arguments advanced by Zanotti. Clearly, Sections 2, 3, and 5 of Am.Sub.H.B. No. 697 are designed only to place the statutes in Section 1 of the Act before the Ohio electorate.

{¶ 32} Finally, it should also be noted that regardless of the outcome of the vote on May 5, 1998, Section 6 of Am.Sub.H.B. No. 697 remains intact. This section establishes a new funding mechanism for elementary and secondary education in Ohio's schools. Although the majority correctly observes that legislative enactments enjoy a presumption of constitutionality, I believe that it would be the state's burden of showing the constitutionality of all remedial legislation in the *DeRolph* litigation.

{¶ 33} For the foregoing reasons, I concur in judgment only.

RESNICK, J., concurs in the foregoing opinion.

_____