[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 1208.]

DEROLPH *v.* THE STATE OF OHIO.

[Cite as *DeRolph v. State*, 1998-Ohio-525.]

(No. 95-2066—Submitted March 24, 1998—Decided August 21, 1998.)

ON MOTION OF APPELLANTS from the Perry County Court of Common Pleas, No. 22043.

———————————

{¶ 1} This matter is before the court on the motion of appellants filed March 23, 1998. The court, having remanded the cause to the trial court for further proceedings, is now without jurisdiction to decide this motion.

{¶ 2} When the court reasserted jurisdiction over *DeRolph v. State* (1997), 78 Ohio St.3d 193, 677 N.E.2d 733, and 78 Ohio St.3d 419, 678 N.E.2d 886, it was for the sole purpose of resolving "* * * any election-related challenge to the May 5, 1998 election * * *." *State ex rel. Taft v. Franklin Cty. Court of Common Pleas* (1998), 81 Ohio St.3d 1244, 691 N.E.2d 677.

{¶ 3} Accordingly, the motion of appellants is ordered stricken from the court's records.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

———————————

**COOK, J., dissenting.**

{¶ 4} I respectfully dissent. Today's decision that the court lacks jurisdiction to rule on the pending motion cannot be squared with the court's previous assertion of jurisdiction over *State ex rel. Taft v. Franklin Cty. Court of Common Pleas* (1998), 81 Ohio St.3d 1244, 691 N.E.2d 677. In *Taft*, the court determined that it could assert exclusive jurisdiction over a declaratory judgment

action pending in Franklin County Common Pleas Court based on the authority of *DeRolph v. State* (1997), 78 Ohio St.3d 193, 677 N.E.2d 733 ("*DeRolph I*") and *DeRolph v. State* (1997), 78 Ohio St.3d 419, 424-426, 678 N.E.2d 886, 890-891 ("*DeRolph II*"). Although I will not restate my dissenting view in *Taft*, a key factor in that dissent was that the *Taft* case did not even involve the *DeRolph* parties or the *DeRolph* issues.

{¶ 5} The court today strikes the pending motion even though that motion relates directly to mandates issued by the *DeRolph* court. Thus, the majority holds that it lacks the authority to enforce its own *DeRolph* mandates despite having previously reached out on the strength of *DeRolph* to take jurisdiction in *Taft* on issues that were only collateral to the *DeRolph* proceedings.

{¶ 6} As part of the stricken motion, appellants ask the court to allocate to the state both the burden of production and the burden of proof in the remanded proceedings. Justices Douglas and Resnick have already expressed their view that it is the "state's burden of showing the constitutionality of all remedial legislation in the *DeRolph* litigation" (*State ex rel. Taft v. Franklin Cty. Court of Common Pleas* [1998], 81 Ohio St.3d 480, 486, 692 N.E.2d 560, 565 [Douglas, J., concurring in judgment only]). Given that the trial court is to hold hearings pursuant to this court's unusual remand and that the decision of that court is to be appealed directly to this court, the questions on burdens of proof and production should be answered, *by a majority decision*, before the trial court begins its proceedings. Since that is not to be, a dissenting analysis to contrast with the existing published viewpoint follows.

{¶ 7} We have consistently expressed that "[a]n enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *E.g., State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one

of the syllabus. The Ohio Constitution vests the legislative authority of this state in the General Assembly. Section 1, Article II, Ohio Constitution. Although the legislative power is subject to the express limitations found in the Constitution and the implied limitation that it must fall within the scope of legislative authority, the legislative and judicial branches are coequal, and neither can be subordinated or made answerable to the other.

{¶ 8} That the court once found the legislature's treatment of school funding unconstitutional cannot create a presumption that its later efforts will also be constitutionally infirm. Nor can this court alter the balance of constitutional power by ordering the legislature to pass new laws as part of a "remedy." In *DeRolph I* this court was presented only with a challenge to the school funding scheme as it existed in 1992. *Id.* at 199, 677 N.E.2d at 738, fn. 1. We did not pass on the myriad of changes to the school funding scheme that have since intervened. The case on remand involves this new legislation.

{¶ 9} Displacing the judicial deference normally accorded the General Assembly in exercising its constitutional authority jeopardizes the separation of powers. It threatens to subordinate the legislative branch to the judiciary by forcing the General Assembly, albeit by proxy, to placate a common pleas judge and, eventually, a majority of this court by *affirmatively* demonstrating that it exercised its constitutionally prescribed function within the confines vaguely set forth by this court in *DeRolph I*. In essence, such a standard forces the General Assembly to seek court approval regarding the *wisdom* of its enactments, since there is no track record of the legislation's effect. On remand, the Attorney General would be forced to affirmatively prove by theory and projection that the General Assembly's latest allocation scheme will satisfy aspirations that the *DeRolph I* majority itself was either unwilling or unable to define.

{¶ 10} In support of their motion to shift the burden of proof, appellants cite footnote 2 of the Arizona Supreme Court's decision in *Hull v. Albrecht* (1997), 190

Ariz. 520, 522, 950 P.2d 1141, 1143. That footnote, however, cited no legal authority for its conclusion. Furthermore, as demonstrated below, appellants' citation of *United States v. Fordice* (1992), 505 U.S. 717, 112 S.Ct. 2727, 120 L.Ed.2d 575, does not support its request to shift the burden of proving constitutionality on remand.

{¶ 11} Initially, it is important to identify the different constitutional authorities that distinguish the United States Supreme Court's exercise of remedial power in *Brown v. Bd. of Edn.* (1955), 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083, 1106 ("*Brown II*"), from this court's order in *DeRolph II.* The federal judiciary derives its power from the United States Constitution. The Supremacy Clause of the federal Constitution "makes federal law paramount over the contrary positions of state officials; the power of federal courts to enforce federal law thus presupposes some authority to order state officials to comply." *New York v. United States* (1992), 505 U.S. 144, 179, 112 S.Ct. 2408, 2430, 120 L.Ed.2d 120, 152. Accordingly, based on notions of federal supremacy, the federal authority may, at times, justify retaining a direct supervisory or overruling power over state officials to enforce compliance with federal law. The federal judiciary's power to supervise state officials involves questions of federalism, while the Ohio judiciary's interaction with its coequal branches of government involves the separation of powers.

{¶ 12} *Brown II* and its progeny have also developed a burden-shifting presumption that distinguishes those cases. Under the *Brown II* line of authority, state school officials bear the burden of demonstrating compliance with the *Brown* mandate with respect to *policies and practices traceable to de jure segregation.* Once it is established that school officials have operated a school system with a history of intentional segregation in violation of the Equal Protection Clause of the Fourteenth Amendment, continuing racial imbalance is considered prima facie proof of a continuing violation and requires school officials to come forward with

sufficient countervailing evidence demonstrating that segregative intent did not motivate their actions. *Keyes v. School Dist. No. 1, Denver, Colo.* (1973), 413 U.S. 189, 207-210, 93 S.Ct. 2686, 2697-2698, 37 L.Ed.2d 548, 562-564; *Dayton Bd. of Edn. v. Brinkman* (1979), 443 U.S. 526, 536-537, 99 S.Ct. 2971, 2978-2979, 61 L.Ed.2d 720, 732-733. In this case, there is no similar justification for assuming that the General Assembly will attempt to maintain or revive aspects of former legislation that the *DeRolph I* court declared unconstitutional. Moreover, the mandate of *Brown II* applied to school officials, and the court was "not content * * * to leave [the] task in the unsupervised hands of local school authorities, trained as most would be under the old laws and practices, with loyalties to the system of separate white and Negro schools." *United States v. Montgomery Cty. Bd. of Edn.* (1969), 395 U.S. 225, 227, 89 S.Ct. 1670, 1671, 23 L.Ed.2d 263, 268. There is no legitimate justification for having a similar suspicion of the General Assembly in this case.

{¶ 13} Finally, *Brown II* and its progeny involved invidious discrimination based on race. Classifications based on race receive strict constitutional scrutiny. *Adarand Constructors, Inc. v. Pena* (1995), 515 U.S. 200, 227, 115 S.Ct. 2097, 2113, 132 L.Ed.2d 158, 182. Under *Washington v. Davis* (1976), 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597, an initial showing of discriminatory purpose is necessary to impose strict scrutiny on facially neutral classifications having discriminatory impact. After discriminatory purpose is established, the governmental actor must defend against strict scrutiny and prevails only if it can demonstrate that its legislation is narrowly tailored to achieve a compelling interest. *Miller v. Johnson* (1995), 515 U.S. 900, 920, 115 S.Ct. 2475, 2490, 132 L.Ed.2d 762, 782. Accordingly, the burden-shifting rationale developed in *Brown II* and its progeny is consistent with the allocation of burdens regularly employed in equal protection cases based on race. Racial motivation is presumed from the combination of a presently existing racial imbalance and a history of intentional

segregation, shifting the burden to school officials to defend the imbalance. In contrast, this case involves neither a suspect classification nor a fundamental right that would require strict scrutiny, nor has there been any presumption identified that justifies shifting the burden of proof to the Attorney General.

**{¶ 14}** The idea that the judiciary must begin with a presumption that all statutes are constitutional until it is proven otherwise is deeply rooted in our Constitution and its framework, which implicitly requires the separation of powers. See *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 28 OBR 250, 503 N.E.2d 136. The novel procedure employed in this case cannot change this essential presumption.

————————————