[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
{¶ 1} Plaintiff-appellant, Jeffrey L. Clark, appeals from the June 12, 2002 decision and judgment entry of the Ohio Court of Claims rendering judgment in favor of defendant-appellee, Bureau of Workers' Compensation ("BWC"). For the reasons that follow, we affirm the judgment of the Court of Claims.
 {¶ 2} On December 15, 1998, appellant was operating a container truck in the course and scope of his employment with Smith's Roll-Off Service when he was severely injured in a motor vehicle collision with Melissa Darding, who was not a fellow employee. Appellant presented a claim and received workers' compensation benefits as a result of his injuries. Appellant also presented claims for compensation to Nationwide Insurance Company, the automobile liability insurer for Melissa Darding, and Motorists Mutual Insurance Company, the underinsured motorist insurer for appellant's employer.
 {¶ 3} Appellant settled his liability claim with Nationwide for $478,842, and settled his underinsured motorist claim with Motorist Mutual for $765,000. (Affidavit of Perry R. Silverman attached to Plaintiff's Memorandum in Opposition to Defendant's Motion for Stay of Proceedings.) The BWC asserted its subrogation rights pursuant to R.C.4123.931, and entered into a settlement agreement with Motorists Mutual on December 7, 1999. Motorists Mutual withheld the sum of $155,000 from the settlement with appellant and paid the BWC's subrogation claim.
 {¶ 4} On November 24, 2000, appellant filed his action against the BWC alleging that the subrogation statute was unconstitutional, and the BWC's actions deprived appellant of his property in violation of the constitution and laws of Ohio. On June 27, 2001, the Ohio Supreme Court decided Holeton v. Crouse Cartage Co. (2001), 92 Ohio St.3d 115, and held that R.C. 4123.931 was unconstitutional under Ohio law. The BWC asserted that despite the unconstitutionality of the subrogation statute, the agreement between Motorists Mutual and the BWC was a valid settlement agreement, and the rights of the parties under the contract vested prior to the decision of the Ohio Supreme Court finding the statute unconstitutional.
 {¶ 5} The parties agreed to submit the case to the Court of Claims on briefs and joint stipulations of fact. The Court of Claims determined that the BWC had the legal right to retain the funds even though the statutory provision which gave the BWC the authority to assert its subrogation rights had been declared unconstitutional. The court found that the BWC's contractual rights vested once the settlement agreement was executed and the BWC received payment from Motorists Mutual in December 1999, and therefore it would not disturb the settlement.
 {¶ 6} Appellant has appealed, assigning as error the following:
 {¶ 7} "1. The Court of Claims erred to the prejudice of the plaintiff-appellant in that its judgment against the appellant is contrary to law.
 {¶ 8} "2. The Court of Claims erred to the prejudice of the plaintiff-appellant in that its judgment against the appellant is contrary to the manifest weight of the evidence."
 {¶ 9} Appellant's assignments of error are interrelated and will be addressed together. Appellant first argues that where a court of supreme jurisdiction holds that a statute is unconstitutional, the effect is that the statute was never the law, and the court's ruling is applied retrospectively. While appellant has correctly stated the general rule, exceptions exists where the court expressly indicates that its decision is to apply only prospectively, or, in those instances in which contractual rights have arisen or a party has acquired vested rights under prior law. Roberts v. Treasurer (2001), 147 Ohio App.3d 403, 411; DeRolph v. State (1997), 78 Ohio St.3d 419, 420.
 {¶ 10} While recognizing that such exceptions do exist, appellant claims that any right to payment arises out of the invalid subrogation statute, and does not grow out of a contractual relationship. We disagree.
 {¶ 11} Here, the BWC made an offer to compromise its subrogation claim through a contract in which the parties agreed to mutual concessions in order to avoid litigation with its attendant expenses and resultant burden upon the legal system. The stated purpose of the settlement agreement was to avoid litigation. The release stated, in pertinent part, that the settlement was "the compromise of a doubtful and disputed claim and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released and that said releasees deny liability therefore and intend merely to avoid litigation and buy their peace." An offer to compromise by settlement is not the same as the assessment and payment of a tax, which admittedly does arise by statute and does not grow out of a contractual relationship. See Peerless Elec. Co. v. Bowers (1955),164 Ohio St. 209, 210 ("The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision. The assessment and payment of a tax does not grow out of a contractual relationship, and there is no showing that any rights have become vested in the appellants under such prior decision"). Thus, we conclude that the payment of $155,000 to the BWC arose as a result of a settlement agreement designed to avoid further litigation of the issue of the BWC's subrogation claim. As an agency of the state of Ohio, the BWC is authorized to enter into contracts and it acquires certain rights as a result of entering into such contracts.
 {¶ 12} Appellant next claims that settlement or compromise of the BWC's subrogation claim does not give rise to a valid or binding contract because appellant did not assent to the terms of the release. The settlement was not between the BWC and appellant, however, and appellant cites no authority for the proposition that he could invalidate the settlement agreement between the BWC and Motorists Mutual by withholding his consent. The question is whether the BWC's contractual rights vested before the Ohio Supreme Court declared the subrogation statute unconstitutional. Here, the contractual rights of the BWC vested at the time the contractual obligations of the contract were fulfilled, i.e., at the time the BWC received payment. Kissinger v. Pavlus, Franklin App. No. 01AP-1203, 2002-Ohio-3083, at ¶ 27. The settlement documents provided to the trial court indicate the settlement was executed and payment issued in December 1999, before the Ohio Supreme Court issued its decision in Holeton. Appellant's argument is not well-taken.
 {¶ 13} Based on the foregoing, appellant's assignments of error are overruled and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
BOWMAN and BRYANT, JJ., concur.