DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Joseph and Rita McLeland, appeal from the judgment of the Summit Count Court of Common Pleas dismissing their complaint for failure to state a claim under Civ.R. 12(B)(6). We affirm.
 {¶ 2} Appellants brought suit in the Summit County Court of Common Pleas for declaratory judgment, permanent injunction, and recovery of illegally collected real estate taxes. Appellants relied upon DeRolph v.State (1997), 78 Ohio St.3d 193 for the proposition that the real estate taxes that they were paying above 10 mills[1] were illegally collected and that the provisions relied upon for collecting the challenged taxes were unconstitutional.
 {¶ 3} Appellee, John Donofrio, moved for dismissal for failure to state a claim for which relief can be granted pursuant to Civ.R. 12(B)(6), and alternatively moved for a more definite statement pursuant to Civ.R. 12(E). The trial court granted Appellee's 12(B)(6) motion to dismiss, and did not rule on the Civ.R. 12(E) motion. Appellants' complaint was dismissed. Appellants appealed, raising three assignments of error for our review.
 ASSIGNMENT OF ERROR I
"The trial court erred in not finding that after the date of March 24, 1998, the Ohio Supreme Court in DeRolph v. State, 78 OS 3rd 193, stated that there would be an `effect' of a real estate tax reduction if prior to that date the Ohio legislature did not enact constitutionally approved law in connection with taxation of real estate to support public schools."
 {¶ 4} As an initial matter, we note that the standard of review for a motion to dismiss for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6) is de novo. Niepsuj v. Niepsuj, 9th Dist No. 21888, 2004-Ohio-4201, at ¶ 6. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. State ex. rel. Hanson v. Guernsey Cty.Bd. of Commrs. (1992), 65 Ohio St.3d 545, 548. In order for the trial court to dismiss a complaint pursuant to Civ.R. 12(B)(6), the court must find beyond a doubt that the plaintiff can prove no set of facts that would support his claim for relief. Id.
 {¶ 5} In their first assignment of error, Appellants maintain that the trial court should have interpreted DeRolph v. State (1997),78 Ohio St.3d 193 (DeRolph I) to hold that there would be an effect of a real estate tax reduction if the Ohio legislature did not enact constitutionally approved law in connection with taxation of real estate to support public schools by March 24, 1998. Appellants argue that the trial court erred in holding otherwise. Essentially, Appellants argue that they are entitled to a real estate tax reduction as a result ofDeRolph. We disagree.
 {¶ 6} In DeRolph I, the constitutionality of Ohio's public elementary and secondary school finance system was challenged. The Supreme Court determined that Ohio's system of school funding violated a number of provisions of the Ohio Constitution, including Section 2, Article VI, requiring a `thorough and efficient' system of public schools throughout the state. The Court found that Ohio's system of common schools throughout the state was not implemented fairly in all districts in the state. Thus, the system was not `thorough and efficient' because some districts were starved for funds or lacked teachers, buildings, and equipment. The Court held that the financing system required a complete systematic overhaul, and directed the General Assembly to enact new legislation in an effort to eliminate wealth-based disparities among Ohio's public school districts.
 {¶ 7} In DeRolph I, the Supreme Court declared a number of Ohio Revised Code sections unconstitutional, including: R.C. 133.301, which granted borrowing authority to school districts, R.C. 3313.483, .487, .488, .489, and .4810, which were the emergency school assistance loan provisions, R.C. 3317.01, .02, .022, .023, .024, .04, .05, .051, and .052, the School Foundation Program, and R.C. Chapter 3318, the Classroom Facilities Act, to the extent that it was underfunded. DeRolph,78 Ohio St.3d 193 at syllabus. As a result of the above findings, the Supreme Court directed the General Assembly to enact new, constitutional legislation for the funding of public schools in conformity with theDeRolph I decision within one year.
 {¶ 8} In their first assignment of error, Appellants claim that theDeRolph Court intended there to be an effect of lowering real estate taxes to support schools if new legislature was not enacted by March 24, 1998. We disagree.
 {¶ 9} While the DeRolph Court does criticize the State of Ohio for relying heavily on real estate taxes to fund schools, there is no indication that the Supreme Court meant to reduce or eliminate real estate taxes. The Court stated that: "Ohio's public school financing scheme must undergo a complete systematic overhaul. The factors which contribute to the unworkability of the system and which must be eliminated are * * * (2) the emphasis of Ohio's school funding system on local property tax. . . [.]" DeRolph I at 212.
 {¶ 10} We interpret the above provision to mean that the State should look to sources in addition to real estate taxes, and not instead of those taxes, to provide funding for the schools. The Court did not state that real estate taxes as a source of funding public schools should be eliminated or reduced. Rather, the Court criticized the State for thrusting the majority of the responsibility of funding the public schools on local school districts instead of "following the constitutional dictate that it is the state's obligation to fund education [.]" DeRolph I at 209. The Court directed the legislature to enact laws to redistribute state money more fairly so as to narrow the gap in education between school districts.
 {¶ 11} The Ohio Constitution requires the state to provide a schooling system that is "thorough and efficient." Due to lack of funding, many of Ohio's schools, as of DeRolph I, did not meet the constitutional requirement of "thorough and efficient." The Court noted that in certain schools plaster was falling off of the ceilings and the walls. In other schools, the children did not have books. In one they found the presence of arsenic in the drinking water. In other schools, they had to ration paper, chalk, paper clips and even toilet paper. The examples of the sub-par conditions of certain Ohio schools are endless. The system of relying primarily on real estate taxes to fund schools led to some affluent school districts being very well-funded while others were literally without books. In DeRolph, the Court noted these problems in the poor school districts and directed the legislature to formulate a distribution plan for state funds that would allow even the poorest school districts to provide a school system in accordance with the provisions of the Ohio Constitution.
 {¶ 12} In criticizing Ohio's overreliance on real estate taxes to fund schools, the Court was not suggesting that real estate taxes should not be used to fund the schools, but instead was challenging the legislature to find a constitutional way to decrease the disparities between Ohio's schools. We do not agree with Appellants that DeRolph intended to lower or eliminate real estate tax funding for schools.
 {¶ 13} After DeRolph I was decided, the State of Ohio filed a motion for reconsideration and requested clarification of whether property taxes could be used as part of the funding solution after DeRolph I. InDeRolph 78 Ohio St.3d 419, (DeRolph II), the Supreme Court granted the State of Ohio's motion for reconsideration and clarification, and held that property taxes could be used as a means of funding the school system, but could not "be the primary means of providing the finances for a thorough and efficient system of schools." Id. at 419.
 {¶ 14} Clearly, the Court did not intend real estate taxes to be eliminated. Nothing in the opinion suggests that real estate taxes should be reduced. In fact, the Court stated that they did not intend a "leveling down" to occur as a result of DeRolph. "There is no `leveling down' component in our decision today. * * * School districts are still free to augment their programs if they chose to do so." DeRolph I at 211.
 {¶ 15} The DeRolph I Court did not hold that real estate taxes should be reduced or eliminated. The Court did, however, hold a number of funding provisions unconstitutional and directed the legislature to enact new funding measures. The Court noted that it would take time to study and put together a new funding system and draft appropriate legislation.DeRolph I at 213. Immediate nullification of the funding statutes that the court held unconstitutional would have had an adverse effect on school funding. Thus, as Appellants point out, they stayed the effect ofDeRolph I for one year so that the legislature could draft appropriate alternative funding statutes before the old funding statutes were nullified. DeRolph I at 213.
 {¶ 16} Appellants maintain that the provision regarding the twelve month stay should have been interpreted by the trial court to mean that if the Ohio legislature did not enact acceptable laws within the twelve month period mentioned, the effect would be a lowering of real estate taxes to support schools. Appellants stated that "[t]he clear implication given in DeRolph v. State, 78 [Ohio St.3d] 419, at page 420, first full paragraph, is that a tax reduction would take place if the Ohio legislature did not pass approved corrective legislation but the debt obligations after the date of March 24, 1998, would change." We find no language in DeRolph supporting Appellants' interpretation. In its entirety, the first full paragraph in DeRolph, 78 Ohio St.3d 420, referenced by Appellants, states as follows:
"Much has been said and published about our decision. With all that has been said, it seems to us that the appellees' motion for reconsideration now before us and its memorandum in support of the motion further support our decision. Specifically, appellees state that `[a] significant amount of borrowing is planned during this period, including $100-200 million that various school districts anticipate borrowing prior to June 30, 1997, in order to meet their operating expenses (including salaries).
Among these school districts is the Cleveland public schools, which had anticipated completing a significant debt restructuring by early May 1997.' (Emphasis added.)
In other words, some school districts need to borrow money to continue to operate and at least one (Cleveland) needs to borrow additional money to help pay off past borrowing."
 {¶ 17} Contrary to Appellants' assertions, we find no language in the above paragraph or in any of the DeRolph cases stating that a tax reduction would occur if new legislation was not enacted by March 24, 1998.
 {¶ 18} Furthermore, in DeRolph v. State (1999), 89 Ohio St.3d 1, the Supreme Court essentially granted an extension of time to the March 24, 1998 deadline. The Court held that:
"In light of the progress that the Governor and General Assembly have made, in some areas, thus far, and unwilling to reject in toto the sum of those efforts, we determine that the best course of action at this time is to provide the defendants more time to comply with Section 2, ArticleVI of the Ohio Constitution. We are confident that, given the additional opportunity presented by this extension of time, the General Assembly and the Governor will continue to deliberate over the many obstacles they face, and will continue to seek solutions to these complex problems." Id. at 88.
 {¶ 19} We find no evidence that the Supreme Court intended real estate taxes to be reduced or eliminated if proper legislation had not been enacted by the 1998 deadline. Further, the 1998 deadline was extended by the 1999 DeRolph decision. In light of the above, we overrule Appellants' first assignment of error.
 ASSIGNMENT OF ERROR II
"The trial court erred in finding that voted taxes to support schools allowed by Ohio Revised Code Chapter 5705, were not intended to be declared unconstitutional by the Ohio Supreme Court in DeRolph v. State, 78 OS 3rd 193, thereby permitting the unabated billing and collection of appellants' real estate taxes."
 {¶ 20} In their second assignment of error, Appellants claim that the voted taxes to support schools allowed by R.C. 5707 were intended to be declared unconstitutional by the DeRolph court. We disagree.
 {¶ 21} DeRolph went through and specifically enumerated which provisions of the Ohio Revised Code were unconstitutional, See DeRolph I,
at syllabus. The Supreme Court did not mention R.C. 5707 in its list of unconstitutional statutes. We do not find that the Supreme Court meant to imply that certain real estate taxes that support schools were unconstitutional. If the Court were to hold R.C. Chapter 5707 unconstitutional, it would have explicitly stated so.
 {¶ 22} Without a specific declaration stating that the above section is unconstitutional and without any independent basis for proving unconstitutionality, we must presume that the taxing statutes are constitutional. State ex. re. Taft v. Franklin Cty. Court of CommonPleas (1998), 81 Ohio St.3d 480, 481. "We recognize that all legislative enactments enjoy a presumption of constitutionality, and the courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional." State ex. rel. Taft, 81 Ohio St.3d 480, 481, citingState ex. rel. Purdy v. Clermont City Bd. of Elections (1996),77 Ohio St.3d 338, 345-346. When we review the constitutionality of legislation, we presume the statutes to be constitutional. Hughes v.Registrar, Ohio Bur. Of Motor Vehicles (1997), 79 Ohio St.3d 305, 307. "All reasonable doubts as to the constitutionality of a statute must be resolved in its favor." (Citations omitted). Desenco, Inc. v. City ofAkron (1999), 84 Ohio St.3d 535. Therefore, in this case, we must presume the constitutionality of R.C. 5707.
 {¶ 23} Nowhere in DeRolph does the Court suggest that tax levies voted on by residents of a school district are unconstitutional. In fact, theDeRolph Court stated that "[s]chool districts are still free to augment their programs if they choose to do so." DeRolph I, at 211. In DeRolph,
the Court directs the legislature to redistribute state funds in a manner that would, regardless of the real estate taxes a community is able to collect, provide for efficient schools for the Ohio students.
 {¶ 24} After DeRolph I, wealthier communities are still free to vote to provide their schools with funding for programs and facilities above what the state determines is the minimum standard of sufficiency. In fact, the Court stated that "in no way should our decision be construed as imposing spending ceilings on more affluent school districts." Id. at 211.
 {¶ 25} We reject the proposition that the Supreme Court impliedly held a Revised Code Chapter unconstitutional. Appellants' second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"The trial court erred in not finding that appellants' real estate tax reduction after the date of March 24, 1998, should be limited to only 10 mills of the total millage allocated to support public schools."
 {¶ 26} In their third assignment of error, Appellants claim that the trial court erred in not holding that their real estate taxes allocated to the public schools should be reduced to 10 mills. We disagree.
 {¶ 27} In support of their third assignment of error, Appellants state that "[w]hile it is clearly implied that there would be an `effect' of reduced taxation of real estate if legislation was not enacted passing constitutional muster, the question remains as to just how that tax reduction, the `effect,' would be determined." Appellants suggest that the effect of the reduced taxation would be to limit the real estate taxation to 10 mills, and the trial court was in error for holding otherwise.
 {¶ 28} We find that the `effect' of DeRolph I was to direct the legislature to enact new provisions for funding of Ohio public schools in place of the ones that have been held unconstitutional in the pursuit of establishing a thorough and efficient schooling system statewide. We find no evidence of an implied effect of reduced taxation as a result ofDeRolph. As we held above, there is no evidence that the Supreme Court intended to reduce, eliminate or limit local real estate tax support for local schools. Appellants' suggestions that their local real estate taxes should be limited to 10 mills is unfounded.
 {¶ 29} We find no support in any of the DeRolph cases for Appellants' proposition that the Supreme Court intended real estate taxes to be decreased or limited to 10 mills. We overrule Appellants' third assignment of error.
 {¶ 30} Appellants' three assignments of error are overruled and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
Exceptions.
Whitmore, J. Concurs
Moore, J. concurs separately saying:
 {¶ 31} While I concur with the majority's decision regarding Appellants' assignments of error, I write separately to emphasize the importance of legislative action.
 {¶ 32} DeRolph I declared school funding unconstitutional. Since that time, the Ohio Supreme Court repeatedly delayed enforcement of the holding in DeRolph I because invalidating school funding in its entirety would further deplete already limited school resources in many areas. As recently as May 2003, the Ohio Supreme Court has refused to strictly enforce the holding in DeRolph I. See State ex rel. Ohio v. Lewis,99 Ohio St.3d 97, 2003-Ohio-2476. In Lewis, the Court expressly refused to permit a trial court to examine any proposed remedies until those remedies are enacted by the legislature. Id. at ¶¶ 30-31. In the instant matter, Appellant has sought to enforce his perceived interpretation ofDeRolph I. The Supreme Court, however, has repeatedly declined to grant such relief:
"Moreover, by repeatedly denying the DeRolph plaintiffs' requests for comparable remedial relief throughout this litigation, we intended to preclude such relief." Lewis, at ¶ 23. While many of our school systems still suffer from the shortfalls noted by the majority, I, as a member of the judiciary, am compelled by the DeRolph precedents to wait for legislative action before reevaluating school funding. Accordingly, I concur with the majority's resolution of Appellants' appeal.
[1] A mill is one percent.