OPINION
{¶ 1} Defendant-appellant, Cincinnati Insurance Company ("CIC"), appeals from the Franklin County Court of Common Pleas' grant of summary judgment in favor of plaintiff-appellee, Joyce Burt, to the extent that the trial court held that Burt could recover uninsured motorist coverage under the umbrella policy CIC issued to Burt's employer, Heritage Community Health ("Heritage"). As cross-appellant, Burt appeals from the trial court's grant of summary judgment to the extent that the trial court held that Burt could not recover uninsured motorist coverage under either the automobile liability policy State Farm Mutual Automobile Insurance Company ("State Farm") issued to her husband, or the excess commercial insurance policy United States Fidelity Guaranty Insurance Company ("USFG") issued to Burt's husband's employer, the Kroger Company ("Kroger").
 {¶ 2} On May 3, 2000, Burt was injured when Andrew F. Harris negligently struck Burt's stopped vehicle while trying to pass it. At the time of the accident, Harris did not possess motor vehicle liability insurance.
 {¶ 3} On December 31, 2001, Burt brought suit seeking compensation for her accident-related injuries. In her amended complaint, Burt asserted a claim of negligence against Harris, and claims for declaratory judgment against Heritage's insurer, CIC; Kroger's insurer, USF and her husband's motor vehicle insurer, State Farm. On October 7, 2002, the trial court found that Harris, who had not answered the complaint or amended complaint, was in default, and granted judgment in favor of Burt on the issue of Harris' liability. The remaining parties all filed summary judgment motions.
 {¶ 4} On December 18, 2002, the trial court granted USFG's and State Farm's motions for summary judgment. Additionally, the trial court granted CIC's motion for summary judgment in part, finding that Burt was not entitled to uninsured motorist coverage under the commercial general liability policy CIC issued to Heritage. However, the trial court also denied CIC's motion for summary judgment in part, finding that Burt was entitled to uninsured motorist coverage pursuant to the umbrella policy CIC issued to Heritage. Finally, the trial court denied Burt's motions for summary judgment against USFG and State Farm, but granted Burt's motion for summary judgment on the CIC umbrella policy.
 {¶ 5} CIC then filed a motion for reconsideration of the trial court's partial denial of its summary judgment motion. The trial court considered the merits of CIC's motion, and denied it on February 25, 2003.
 {¶ 6} Both CIC and Burt then appealed to this court.
 {¶ 7} While these appeals were pending before this court, the Ohio Supreme Court decided Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, which limited Scott-Pontzer v.Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, and overruled Ezawa v. Yasuda Fire Marine Ins. Co. of Am. (1999),86 Ohio St.3d 557. As Burt relied upon both Scott-Pontzer andEzawa in asserting her claims against CIC and USFG, she filed a motion for a special remand We address this motion below. Burt also filed before this court a motion to dismiss CIC's appeal on jurisdictional grounds. We also address that motion below.
 {¶ 8} On appeal, CIC assigns the following single assignment of error:
The trial court erred in finding that defendant appellant's umbrella policy provided coverage to plaintiff-appellee contrary to defendant-appellant's policy requirement that plaintiff-appellee be in the course and scope of employment to have insured status as a prerequisite for such coverage.
 {¶ 9} On cross-appeal, Burt assigns the following errors:
[1.] The trial court erred in granting summary judgment in favor of cross-appellee, State Farm Mutual Autombile [sic] Insurance Company, and denying appellee/cross-appellant, Joyce Burt's, Motion for Summary Judgment on her claim for declaratory relief on State Farm Policy Number 004-7075-C24-35D.
[2.] The trial court erred in granting summary judgment in favor of cross-appellee, United State Fidelity and Guarantee Company, and denying appellee/cross-appellant, Joyce Burt's, Motion for Summary Judgment on her claim for declaratory relief on United States Fidelity and Guarantee Commercial Policy Number DRE2389700.
 {¶ 10} Before addressing CIC's assignment of error, we first must determine whether the trial court's February 25, 2003 decision and entry is a final appealable order. In order to determine whether an order is final and appealable, we must consider whether the order meets the requirements of R.C. 2505.02
and, if applicable, Civ.R. 54. Chef Italiano Corp. v. Kent StateUniv. (1989), 44 Ohio St.3d 86, syllabus.
 {¶ 11} CIC argues that the February 25, 2003 decision and entry is a final order pursuant to R.C. 2505.02(B)(2), which provides that "[a]n order that affects a substantial right made in a special proceeding" is a final order.[1] CIC asserts that the present action is a "special proceeding" because it requests a declaratory judgment, and the Ohio Supreme Court has previously recognized a declaratory judgment action as a "special proceeding." General Acc. Ins. Co. v. Ins. Co. of North America
(1989), 44 Ohio St.3d 17, 22. Further, CIC asserts that it has a "substantial right" in the enforcement of the umbrella policy terms. See Marsh v. State Auto. Mut. Ins. Co. (1997),123 Ohio App.3d 356, 358. Thus, CIC concludes the February 25, 2003 decision and entry is an order that "affects a substantial right made in a special proceeding." We disagree.
 {¶ 12} CIC's analysis ignores the crucial question of whether the February 25, 2003 decision and entry affects the substantial right CIC asserts. An order that affects a substantial right is "one which, if not immediately appealable, would foreclose appropriate relief in the future." Bell v. Mt.Sinai Med. Ctr. (1993), 67 Ohio St.3d 60, 63, modified on other grounds, Moskovitz v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, paragraph four of the syllabus. Here, if we delay our review of the CIC umbrella policy terms until after Burt's action is fully adjudicated, CIC still has appropriate relief — in the form of another appeal — available to it in the future. Thus, even assuming that the order here was rendered in a "special proceeding," it does not "affect" CIC's asserted "substantial right." Accordingly, we conclude that the February 25, 2003 decision and entry is not a final appealable order, and we grant Burt's motion to dismiss.
 {¶ 13} We now turn to Burt's assignments of error. By her first assignment of error, Burt argues that she is entitled to uninsured motorist coverage under the motor vehicle liability policy State Farm issued to her husband In response to Burt's argument, State Farm asserts that the policy precludes coverage if the insured is operating a motor vehicle without a reasonable belief that she is legally entitled to do so:
When Coverage U Does Not Apply
There is no coverage:
* * *
For Bodily injury to an insured:
* * *
c. While the insured is operating or occupying a motor vehicle without a reasonable belief that the insured is entitled to do so, provided that under no circumstances will aninsured whose license has been suspended, revoked, or never issued, be held to have a reasonable belief that the insured is entitled to operate a motor vehicle.
(Emphasis sic.)
 {¶ 14} Based upon this section, State Farm argues that Burt is not entitled to uninsured motorist coverage because, at the time of the accident, she lacked an Ohio driver's license and she was unsure whether she had a Georgia driver's license. In support of this argument, State Farm cites the following testimony from Burt's deposition:
Q: At the time of the accident, did you have an Ohio driver's license or a Georgia driver's license?
A: No.
Q: Did you have a — was your driver's license an Ohio license?
A: No.
Q: It was a Georgia license?
A: No.
Q: Okay. Did you have a driver's license at the time of the accident?
A: No, I don't think so.
Mr. Kerpsack: Do you understand his question? He's asking you whether your Georgia driver's license was valid when the accident happened.
The Witness: I don't recall.
By Mr. Founds:
Q: When you lived in Georgia, had you had any traffic violations?
A: Yes.
Q: Okay. How many did you have?
A: Two.
Q: Two? What kind of violations were they?
A: Speeding.
Q: Okay. Did you pay your fines?
A: No, didn't have any money to pay them.
* * *
Q: Okay. Do you recall ever renewing your driver's license in Georgia?
A: No.
* * *
Q: At the time of the accident —
A: Okay.
Q: — you didn't have an Ohio driver's license, you had a Georgia driver's license?
A: I remember having a Georgia driving license but I'm not sure was it valid or invalid at the time.
(Deposition at 59-61.)
 {¶ 15} Given this testimony, State Farm argues, and the trial court found, that Burt did not have a reasonable belief she was entitled to operate a motor vehicle and, thus, she was not due uninsured motorist coverage.
 {¶ 16} In rebuttal to State Farm's argument, Burt asserts that she produced two pieces of evidence demonstrating that either she had or believed she had a valid Georgia driver's license at the time of the accident: (1) a certified print-out from the Georgia Department of Motor Vehicle Safety ("DMV") stating that the DMV had "no history" regarding Burt's license for the three years for which Burt requested information, and (2) Burt's affidavit stating that it was her belief that she had a valid Georgia driver's license at the time of her accident, and that she had not received any notification from the Georgia DMV that her license was the subject of revocation or suspension. Based upon this evidence, Burt argues that, at a minimum, a question of fact exists regarding whether she had a reasonable belief whether she was entitled to operate a motor vehicle.
 {¶ 17} We are not persuaded by Burt's argument. First, we do not interpret the certified print-out from the Georgia DMV to mean that Burt had a valid driver's license on the date of the accident. The print-out merely states that the DMV has "no history for requested period." Burt apparently requested that the DMV search its records for any information it maintained regarding her license for a three-year period. However, nowhere in the certified print-out is there any indication regarding which three years Burt specified. As Burt's Georgia license was issued on January 3, 1992 — more than three years ago — we cannot assume that this three-year period included May 3, 2000, the date of the accident.
 {¶ 18} Second, Burt's affidavit contradicts her deposition testimony, and such a contradictory affidavit cannot create an issue of fact. Luft v. Perry Cty. Lumber Supply Co., Franklin App. No. 02AP-559, 2003-Ohio-2305, ¶ 59 ("Where a [non-moving party] testifies to something in a deposition, inconsistent statements in a later affidavit cannot establish a genuine issue of material fact"); Zacchaeus v. Mt. Carmel Health Sys. (Feb. 5, 2002), Franklin App. No. 01AP-683, ("`[A] non-moving party cannot defeat a motion for summary judgment by creating an issue of fact through a contradictory affidavit,'" citing Schaeffer v.Lute [Nov. 22, 1996], Lucas App. No. L-96-045). In her deposition testimony, Burt testified that she did not know whether she had a valid Georgia driver's license at the time of the accident, but in her affidavit she testified that she believed she had a valid Georgia driver's license.
 {¶ 19} In an attempt to explain the discrepancy, Burt argues that State Farm's deposition questions were ambiguous and, thus, Burt's testimony could merely mean that she did not have a Georgia driver's license in her physical possession at the time of the accident. Consequently, Burt argues that, when construed together, her deposition and affidavit testimony mean that although she did not have a driver's license with her at the time of the accident, she did have a valid license. We disagree.
 {¶ 20} After Burt testified in her deposition that she did not have a Georgia driver's license, Burt's attorney asked her whether she understood the question, and stated, "[h]e's asking you whether your Georgia driver's license was valid when the accident happened." Burt then answered that she did not recall whether she had a valid license, and later amplified that answer by stating that the Georgia DMV had issued her a driver's license, but she did not know whether or not it was valid at the time of the accident. Accordingly, because Burt was aware of the full import of State Farm's questions, we can only construe her affidavit testimony as contrary to her deposition testimony.
 {¶ 21} In light of Burt's deposition testimony, we agree with the trial court that Burt could not have a reasonable belief that she was entitled to operate a motor vehicle. Burt herself admitted that she did not know whether her Georgia driver's license was valid, that she had not paid two speeding tickets, and that she had never renewed her license. Therefore, pursuant to the State Farm policy, Burt is not entitled to uninsured motorist coverage.
 {¶ 22} Accordingly, we overrule Burt's first assignment of error.
 {¶ 23} By her second assignment of error, Burt argues that the trial court erred in granting summary judgment in favor of USFG, and thereby concluding that she was not entitled to uninsured motorist coverage under the USFG policy. We decline to address the substance of Burt's argument, given that Galatis
disposes of Burt's claim against USFG. Pursuant to Galatis,
coverage for the second class of insureds, i.e., family members, applies only when the policyholder is an individual. In other words, such coverage "is simply inapposite when the policyholder is a corporation." Id. at ¶ 41.
 {¶ 24} As we stated above, USFG issued the instant policy to Kroger, Burt's husband's employer. Thus, in relation to this policy, Burt would be among the "second class of insureds" thatGalatis held were not covered by insurance policies issued to corporations. Further, nothing in the USFG policy extends coverage to employees' family members such as Burt. Accordingly, pursuant to Galatis, we conclude that Burt is not entitled to uninsured motorist coverage under the USFG policy.
 {¶ 25} Burt, however, argues that this court cannot applyGalatis retrospectively to this matter. In making this argument, Burt cites Peerless Elec. Co. v. Bowers (1955),164 Ohio St. 209, 210.[2]
 {¶ 26} The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former law was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision.
 {¶ 27} Based upon the general exception to retrospective application articulated in Peerless, Burt argues that theScott-Pontzer and Ezawa decisions endowed her with the contractual rights of an insured under the USFG policy, including the right to uninsured motorist coverage. We disagree and conclude that Burt misconstrues the Peerless rule that decisions cannot be applied retrospectively "where contractual rights have arisen."
 {¶ 28} The Ohio Supreme Court first addressed this rule inLewis v. Symmes (1900), 61 Ohio St. 471, in which the court held that:
The rule that retrospective operation should not be given to a change in judicial opinions respecting the constitutional validity of legislative enactments can be invoked only to avoid the impairment of the obligation of contracts which have been entered into pursuant to statutory provisions * * *.
Id. at paragraph one of the syllabus. As the court explained, the reason for this rule "is to secure the full operation of the constitutional prohibition of laws impairing the obligation of contracts." Id. at 486.
 {¶ 29} In Peerless, the Ohio Supreme Court expanded the rule articulated in Lewis to mandate the retrospective application of a decision overruling another decision, not just a statute. Recognizing the same exception to this rule as theLewis court, the Peerless court generally stated the courts should not retrospectively apply decisions "where contractual rights have arisen or vested rights have been acquired under the prior decision." Peerless, at 210.
 {¶ 30} Thus, pursuant to the rule articulated in Lewis andPeerless, a court must apply decisions retrospectively, unless the parties to a contract relied upon the overruled law when entering into the contract.[3] Consequently, when a court later finds the law in effect at the time the parties entered into the contract unconstitutional or otherwise invalid, contractual rights and obligations remain undisturbed. In other words, "where contractual rights have arisen" based upon a law later invalidated, the decision invalidating the relied-upon law cannot be applied to avoid or alter the terms of the contract.
 {¶ 31} Ohio courts have applied this rule consistently since its inception. Most recently, the Ohio Supreme Court applied this rule in DeRolph v. State (1997), 78 Ohio St.3d 419
("DeRolph"), in which the court addressed a motion for reconsideration filed after DeRolph v. State (1997),78 Ohio St.3d 193 ("DeRolph I"). The issue in DeRolph I was the constitutionality of Ohio's statutory scheme for financing public education. Although the court found that the statutory scheme was unconstitutional, it stayed the effect of its decision for 12 months.
 {¶ 32} In a motion for reconsideration, the state questioned whether debt obligations incurred by school districts under the overruled statutory scheme prior to the end of the year-long stay would remain valid after the stay expired. The court, recognizing that "an agreement by one party to borrow and repay money and another party to lend the money results in a contract," held thatDeRolph I could not be applied retrospectively to the contracts. DeRolph, supra, at 420. Accordingly, because the school districts and lenders planned on entering into contracts relying upon the statutory scheme, courts could not applyDeRolph I to interfere with the rights and obligations in those contracts.
 {¶ 33} Unlike the parties to the school district loan contracts, CIC and Kroger did not rely upon the invalidated law (i.e., Scott-Pontzer and Ezawa) when entering into the policy. USFG and Kroger entered into the policy on January 1, 2000 — after the Ohio Supreme Court decided both Scott-Pontzer
and Ezawa. Nevertheless, it is apparent from the face of the USFG policy that the parties did not rely upon Scott-Pontzer
or Ezawa when entering into the policy. Rather, USFG and Kroger executed a rejection of all uninsured and underinsured motorist coverage, thereby eschewing reliance upon any law addressing whether an employee or his family members were entitled to uninsured or underinsured motorist coverage under the excess policy. Consequently, the contractual rights and obligations fashioned by USFG and Kroger were not based upon either Scott-Pontzer or Ezawa and, thus, the application ofGalatis cannot impair these rights and obligations. Therefore, we must apply Galatis retrospectively to this case.
 {¶ 34} Burt, however, asserts one final argument to support her contention that Galatis should not apply to this case. Burt argues that the application of Galatis is barred by the standard by which a superior court judges whether stare decisis should be abandoned. The Ohio Supreme Court applies the stare decisis standard in order to determine whether it may overrule a prior Supreme Court decision. Therefore, that standard has no bearing upon whether Galatis should be applied to cases pending in the lower courts. Accordingly, we must apply Galatis
retrospectively to this case and, thus, we conclude that the USFG policy does not insure family members of employees.
 {¶ 35} Accordingly, we overrule Burt's second assignment of error.
 {¶ 36} We next address Burt's motion for a special remand, in which she requests that we remand this case for the trial court to determine the following factual questions: (1) whether Burt was in the scope of employment with Heritage at the time of her accident; (2) the intent of the contracting parties in providing uninsured and underinsured motorist coverage to employees and/or their family members injured outside of the scope of employment; and (3) the undue hardship created by Burt's reliance uponScott-Pontzer and Ezawa.
 {¶ 37} First, because we determined that we did not have jurisdiction to consider CIC's appeal, Burt's motion is denied as it seeks a remand for consideration of issues related to that appeal. Second, because Burt does not provide any explanation for or argument supporting the second ground for her request for remand, we deny her motion on that ground. Finally, because Burt's third ground for requesting a remand is based upon an incorrect application of Chevron and the Galatis stare decisis standard (both discussed above), we deny the remainder of her motion.
 {¶ 38} For the foregoing reasons, we grant Burt's motion to dismiss CIC's appeal, deny Burt's motion for a special remand, and we overrule Burt's assignments of error. The judgment of the Franklin County Court of Common Pleas granting summary judgment to USFG and State Farm is affirmed.
Motion to dismiss granted; motion for a special remand denied; and judgment affirmed.
Bryant and Sadler, JJ., concur.
[1] Notably, CIC does not argue that the February 25, 2003 decision and entry meets the requirements of any other section of R.C. 2505.02(B), and we find that no other section supports this appeal.
[2] Burt also cites to Chevron Oil Co. v. Huson (1971),404 U.S. 97, 92 S.Ct. 349, in making this argument. However,Chevron does not apply when the Ohio Supreme Court overrules a prior state common law decision. Jones v. St. Anthony Med. Ctr.
(Feb. 20, 1996), Franklin App. No. 95AP-1014.
[3] We recognize that courts also will not apply a decision retrospectively if a litigant has acquired a vested right under the prior decision. However, as Burt limits her argument to the contract exception, we will not discuss the vested rights exception.