OPINION
{¶ 1} Plaintiff-appellant, Epic Properties ("Epic"), appeals from the November 9, 2006 entry of the Franklin County Municipal Court ("Trial Entry"), interpreting terms in a commercial lease between Epic, as the original landlord's assignee, and defendant-appellee, OSU LaBamba, Inc. ("LaBamba"). Epic further appeals from the trial court's *Page 2 
December 21, 2006 decision and entry denying Epic's motion for a new trial ("New Trial Entry").
 {¶ 2} This action arises out of a commercial lease ("Lease"), dated March 16, 2001, between 1960 High Street Ltd. and LaBamba, pursuant to which LaBamba leased premises located at 1956 North High Street in Columbus, Ohio. In 2002, 1960 High Street Ltd. assigned the Lease to Epic in connection with Epic's purchase of property, including the leased premises, from 1960 High Street Ltd. The Lease requires LaBamba to reimburse Epic for a share of taxes and insurance. Section 1.7 of the Lease defines "Tenant's Share of Taxes and Insurance" as 12.50 percent, and Section 5 of the Lease sets forth LaBamba's responsibility to pay its share of taxes and insurance, providing:
 With respect to each calendar year or portion thereof during the term of this Lease, Tenant shall pay, as additional rent, Tenant's share, as set forth in Section 1.7, of any and all Taxes which are payable by Landlord during such calendar year or portion thereof. In addition, with respect to each calendar year or portion thereof during the term of this Lease, Tenant shall pay, as additional rent, Tenant's share, as set forth in Section 1.7, of the premiums for fire and extended coverage insurance covering the building of which the Premises are a part (the Building) and the improvements thereon which are payable by Landlord during such calendar year or portion thereof. * * * The term Taxes, as used herein shall mean all real property taxes (and any tax levied wholly or partly in lieu thereof), assessments, vault charges, licenses and permit fees and other governmental levies, unforeseen as well as foreseen, of any kind and nature which are assessed, levied, confirmed or imposed, or which become a lien, upon the Building or the sidewalks or streets in front of or adjoining the same, and which become payable by Landlord, during the term of this Lease.
(Emphasis added.) The crux of the parties' dispute concerns the interpretation of Section 5. *Page 3 
 {¶ 3} On November 16, 2005, Epic filed a complaint for forcible entry and detainer, alleging that LaBamba failed to pay its share of real estate taxes and demanding restitution of the premises and payment for past due amounts. On November 30, 2005, LaBamba filed an answer to Epic's complaint along with counterclaims for breach of contract and unjust enrichment, alleging that Epic and 1960 High Street Ltd. overcharged LaBamba for its share of taxes and insurance since the inception of the Lease term. On December 7, 2005, Epic filed a reply to LaBamba's counterclaim, denying the allegations therein.
 {¶ 4} It is undisputed that LaBamba is responsible for reimbursing Epic for some portion of taxes and insurance and that its share of such expenses is 12.5 percent. The parties' dispute centers around the whole to which LaBamba's 12.5 percent share applies. Pursuant to Section 5 of the Lease, LaBamba is responsible for 12.5 percent of the insurance premiums "covering the building of which the Premises are a part (the Building) and the improvements thereon" and for 12.5 percent of taxes "upon the Building or the sidewalks or streets in front of or adjoining the same." The Lease does not define the term "building." Epic contends that the Lease requires LaBamba to pay 12.5 percent of the taxes and insurance on the entirety of Epic's property located at 1948-1960 North High Street and 18-24 East 17th Street (the "Epic Property")[1] and that LaBamba paid such amount, without complaint, for the first four years of the Lease term. LaBamba, on the other hand, claims that the Lease requires it to pay only 12.5 *Page 4 
percent of the taxes and insurance related to the lease premises, i.e., 1956 North High Street.
 {¶ 5} On October 5, 2006, the trial court held a bench trial to determine the meaning of the relevant Lease terms. Epic's counsel framed the single issue before the trial court as "what is the meaning of the lease as respects to the word `building' in Section 5 under Tenant's Share of Taxes and Insurance." (Tr. at 138.) Before trial, Epic's counsel explained, "what the parties are stipulating from a procedural standpoint is a trial on the issue of the meaning of the lease as to what is or is not reimbursable; and based on that determination by the Court, then we would submit either a joint accounting or separate accounting for the Court then to rule on." Id. at 13-14. At trial, the court admitted the stipulated evidence and heard testimony from four witnesses.
 {¶ 6} On November 9, 2006, the trial court issued the Trial Entry, reiterating that the bench trial was held "for the sole purpose of interpreting the [Lease], particularly Section 1.7 governing the tenant's share of taxes and insurance." The court noted the Lease's distinction between the "premises," defined as 1956 North High Street, and the larger, undefined "building" of which the premises is a part. Finding the term "building" ambiguous, the trial court sought to determine the parties' intent. The trial court reviewed the Lease and the leases of other tenants in the Epic Property and examined photographs of the Epic Property. The trial court also noted the testimony of Ramiro Aguas, who executed the Lease on behalf of LaBamba, that he viewed the Epic Property as separate buildings and the leased premises as the first floor of one building. The court concluded that "12.50% pertains to more than [LaBamba's] leased premises *Page 5 
but less than all of [Epic's] properties in this vicinity." Applying the common definition of "building" as a structure enclosing a space within its walls, the court found that:
 * * * [T]he "building" [LaBamba] occupies is parcel 010-023557 and that the portion or premises of this building that [LaBamba] occupies is the first floor and is assigned the address of 1956 North High Street. Based upon this determination of the term building, the Court finds that [LaBamba], according to the language of the [Lease], is responsible for 12.50% of the taxes and insurance of this building or parcel 010-023557. * * *
The trial court also stated that Epic's construction of "building" to include the entire Epic Property would result in Epic recovering more than 100 percent of its taxes and insurance, based on the percentages assigned to each tenant.
 {¶ 7} On November 22, 2006, Epic filed a motion for a new trial, pursuant to Civ.R. 59(A)(6), arguing that the Trial Entry was based on a mathematical error and was, thus, against the manifest weight of the evidence. Epic based its argument in support of a new trial on the trial court's statement that Epic would recover more than 100 percent of its costs were the court to conclude that LaBamba owed 12.5 percent of the taxes and insurance for the Epic Property. Epic contends that only some of its tenants' leases include terms applying the tenants' shares of taxes and insurance to the entire Epic Property and that simply adding the percentage assigned to each tenant results in an inaccurate representation of Epic's recoupment. Epic cites trial testimony that, even with LaBamba paying 12.5 percent of the taxes and insurance on the Epic Property, Epic recovers significantly less than 100 percent of its costs.
 {¶ 8} On December 21, 2006, the trial court issued the New Trial Entry, denying Epic's motion for a new trial. Without admitting a miscalculation, the trial court stated that it looked to the other tenants' leases only to see how the tenants' shares of taxes *Page 6 
and insurance were defined, in an attempt to determine the whole to which LaBamba's 12.5 percent share applied. The court stated that it based its interpretation of the term "building" on the face of the Lease, the space covered by the Lease, and what the Epic Property looked like. The New Trial Entry states, "[t]his is a final appealable order."
 {¶ 9} On January 16, 2007, Epic filed a notice of appeal from both the Trial Entry and the New Trial Entry. Epic asserts three assignments of error:
 I. The Trial Court committed error because its decision failing to grant Plaintiff Appellant's Epic Properties' Motion for a New Trial was an abuse of discretion.
 II. The Trial Court committed error because its Decision and Entry dated November 9, 2006 was against the manifest weight of the evidence.
 III. The Trial Court committed error in its Decision dated November 9, 2006 because its interpretation of the terms of the contract was incorrect as a matter of law.
Because neither the Trial Entry nor the New Trial Entry is a final appealable order, we lack jurisdiction and, accordingly, we do not reach the merits of Epic's assignments of error.
 {¶ 10} Section 3(B)(2), Article IV of the Ohio Constitution, limits this court's appellate jurisdiction to the review of final orders of lower courts. The Ohio Supreme Court has stated that a final order "is one disposing of the whole case or some separate and distinct branch thereof." Lantsberry v. Tilley Lamp Co. (1971), 27 Ohio St.2d 303, 306. An appellate court may raise, sua sponte, the jurisdictional question of whether an order is final and appealable. See Chef Italiano Corp. v.Kent State Univ. (1989), 44 Ohio St.3d 86, 87; State ex rel. White v.Cuyahoga Metro. Hous. Auth. (1997), 79 Ohio St.3d 543, 544,1997-Ohio-366. Moreover, we must sua sponte dismiss an appeal that *Page 7 
is not from a final appealable order. See Whitaker-Merrell Co. v. GeupelConstr. Co. (1972), 29 Ohio St.2d 184, 186.
 {¶ 11} A trial court's order is final and appealable only if it meets the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B).Denham v. New Carlisle (1999), 86 Ohio St.3d 594, 596, 1999-Ohio-128, citing Chef Italiano Corp. at 88. In Noble v. Colwell (1989),44 Ohio St.3d 92, 96, the Ohio Supreme Court held that, to constitute a final order, an order must fit into at least one of the categories set forth in R.C. 2505.02(B), which defines a final order, in pertinent part, as any of the following:
 (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
 (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
 (3) An order that vacates or sets aside a judgment or grants a new trial[.]
" `Substantial right' means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1).
 {¶ 12} As the Ohio Supreme Court noted in Denham at 595, courts must read R.C. 2505.02 in conjunction with Civ.R. 54(B), which provides:
 When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and *Page 8 
liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all of the parties.
Thus, Civ.R. 54(B) applies to situations where there is more than one claim for relief presented or there are multiple parties involved in an action, and where the trial court has rendered judgment with respect to fewer than all the claims or fewer than all the parties.
 {¶ 13} We first address whether the Trial Entry and New Trial Entry constitute final orders under R.C. 2505.02. Under both R.C.2505.02(B)(1) and (B)(2), an order is a final order only if it affects a substantial right. While the parties' claims for forcible entry and detainer, breach of contract, and unjust enrichment clearly involve substantial rights, the crucial question is whether the trial court's orders affected those substantial rights. See Bell v. Mt. Sinai Med.Ctr. (1993), 67 Ohio St.3d 60, 63. An order that affects a substantial right is one which, if not immediately appealable, would foreclose appropriate relief in the future. Id.
 {¶ 14} Unless a trial court's order affects the parties' substantial rights, the order is not final. DeAscentis v. Margello, Franklin App. No. 04AP-4, 2005-Ohio-1520, at ¶ 19, citing Burt v. Harris, Franklin App. No. 03AP-194, 2004-Ohio-756, at ¶ 12. In Burt, the plaintiff filed claims for declaratory judgment against multiple insurance companies, claiming entitlement to uninsured motorist coverage under various policies. On summary judgment, the trial court found that the plaintiff was entitled to coverage under one of two policies issued by a single insurer. Despite the insurer's assertion that it had a substantial right in the enforcement of its policy, this court held: *Page 9 
 * * * [I]f we delay our review of the [insurer's] umbrella policy terms until after [the plaintiff's] action is fully adjudicated, [the insurer] still has appropriate relief-in the form of another appeal-available to it in the future. Thus, * * * the order here * * * does not "affect" [the insurer's] asserted "substantial right." * * *
Burt at ¶ 12. Here, an immediate appeal is not necessary to preserve the availability of appropriate relief to Epic. If we delay our review of the trial court's interpretation of the Lease until Epic and LaBamba's claims have been fully adjudicated, Epic would still have appropriate relief available in the form of another appeal. Accordingly, we find that neither the Trial Entry nor the New Trial Entry affected Epic's substantial rights.
 {¶ 15} The Trial Entry and New Trial Entry also fail to satisfy the requirements of R.C. 2505.02(B)(1) for an additional reason. To constitute a final order under R.C. 2505.02(B)(1), an order must, in effect, determine the action and prevent a judgment. InDeAscentis, this court dismissed an appeal for lack of a final appealable order, in part because the entry appealed from did not determine the action. There, the plaintiffs asserted seven claims against the defendants, arising out of the parties' oral agreement to acquire, develop, and sell real property in multiple real estate projects. On appeal, this court found no final order where the trial court granted summary judgment in favor of the defendants on the plaintiffs' claims relating to one project but did not address those claims as they related to the parties' other projects. We found that "none of [the plaintiffs'] causes of action was entirely dismissed," that "[n]o single claim [had] been entirely resolved," and that "the trial court [had] not resolved all of the issues as to any one defendant." Id. at ¶ 21. Accordingly, we concluded that the trial court's order granting partial summary judgment was not a final order because it did not, in effect, determine the action. *Page 10 
 {¶ 16} Here, neither the Trial Entry nor the New Trial Entry determined the action or any discreet claim therein. The record clearly reflects the understanding of the parties' attorneys and the trial court that the sole issue at trial was the interpretation of the Lease provisions related to LaBamba's responsibility to reimburse Epic for taxes and insurance. The attorneys agreed that, after the trial court determined the meaning of the relevant Lease terms, the parties would need to submit accountings in order for the court to finally resolve the parties' claims. In the Trial Entry, the court interpreted the Lease; it did not fully adjudicate any of the claims asserted in the parties' pleadings. Likewise, the New Trial Entry did not fully adjudicate any of the parties' claims. The trial court did not determine the amount of taxes and insurance for which LaBamba was responsible or the amount that LaBamba paid, as is necessary to determine either Epic's claim for amounts due or LaBamba's claim for alleged overpayments.
 {¶ 17} Even were we to view the Trial Entry as deciding the issue of liability under the Lease, the issue of damages remains pending. As a general rule, even where the issue of liability has been determined, but a factual determination of relief is unresolved, the finding of liability is not a final appealable order. Noble at 96. Moreover, although the court's interpretation of the Lease terms may prevent Epic's recovery on its forcible entry and detainer action, the court did not expressly decide the right to immediate possession of the property. See Blosser v. Bowman (May 1, 2001), Franklin App. No. 00AP-1140 ("[a] forcible entry and detainer action decides the right to immediate possession of the property and nothing else"). Because no single claim has been fully resolved, we find that the trial court's entries did not, in effect, determine the *Page 11 
action, as required to constitute a final order under R.C.2505.02(B)(1). See DeAscentis at ¶ 21, citing Jackson v. Scioto Downs,Inc. (1992), 80 Ohio App.3d 756, 757-758.
 {¶ 18} Although we recognize that the denial of a motion for a new trial generally constitutes a final order, Grossman v. Hawk Mfg. Co.,Inc. (Dec. 29, 1992), Franklin App. No. 92AP-1026, we find that the New Trial Entry does not. In Grossman, this court found that the trial court's denial of a motion for a new trial was not a final appealable order, despite the general rule to the contrary, where the underlying trial was not completed, due to the parties' settlement agreement. Here, the trial court did complete a trial, but that trial related only to a single, discreet issue and did not resolve any claim before the court. Moreover, the Trial Entry, which formed the basis of Epic's motion for a new trial, did not constitute a final order. Although R.C. 2505.02(B)(3) provides that an order granting a new trial is a final order, the statute confers no corresponding status on an order denying a motion for a new trial. For the reasons addressed above, the New Trial Entry does not satisfy the requirements of R.C. 2505.02(B)(1) or (B)(2), and, therefore, we find that the trial court's denial of Epic's motion for a new trial did not constitute a final order.
 {¶ 19} In addition to failing because neither of the entries from which Epic appeals is a final order, this appeal also fails because the entries do not contain a certification by the trial court that there is no just reason for delay, as required by Civ.R. 54(B). Because neither the Trial Entry nor the New Trial Entry fully adjudicated the multiple claims before the court, the requirements of Civ.R. 54(B) must be satisfied in order for the entries to be immediately appealable. Thus, even if the entries from which Epic appeals fell within one of the categories of final orders enumerated in R.C. *Page 12 2505.02(B), they would be subject to the requirement of Civ.R. 54(B). Neither the Trial Entry nor the New Trial Entry contains an express determination that there is no just cause for delay. In the absence of such a determination, the trial court's entries are not immediately appealable and remain subject to revision by the trial court at any time before the entry of judgment finally adjudicating all of the claims. See Civ.R. 54(B). While the New Trial Entry provides, "[t]his is a final appealable order," we are not bound by the trial court's determination on that issue, and such a provision does not overcome the lack of certification that there is no just cause for delay. Thome v.Pettit (July 6, 2001), Washington App. No. 01CA6, 2001-Ohio-2493;Kowars v. Yount, Delaware App. No. 03-CA-E-09-045, 2004-Ohio-1741, at ¶ 6-8 (dismissing appeal where trial court entry stated that it was final and appealable but lacked a Civ.R. 54[B] determination of no just cause for delay). Therefore, having not satisfied the requirements of Civ.R. 54(B), we find that neither the Trial Entry nor the New Trial Entry is an appealable order.
 {¶ 20} For the aforestated reasons, we conclude that the entries from which Epic appeals do not constitute final appealable orders. Accordingly, we lack jurisdiction to consider the merits of Epic's assignments of error. Therefore, we dismiss this appeal.
Appeal dismissed.
BROWN and TYACK, JJ., concur.
[1] The Epic Property encompasses four Franklin County Auditor parcels: 010-042300, 010-023557, 010-015589, and 010-053683. 1956 North High Street is located entirely within parcel number 010-023557. *Page 1