[Cite as *State v. Striblin*, 2024-Ohio-2142.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| ELIJAH STRIBLIN | : | Case No. CT2023-0027 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common
                            Pleas, Case No. CR2022-0474




JUDGMENT:                   Reversed and Vacated




DATE OF JUDGMENT:           June 4, 2024




APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

RONALD L. WELCH                       ELIZABETH N. GABA
JOHN CONNOR DEVER                     1231 East Broad Street
27 N. 5th Street, Suite 201           Columbus, OH  43205
Zanesville, OH  43701

*King, J.*

{¶ 1} Defendant-Appellant Elijah Striblin appeals the April 7, 2023 judgment of conviction and sentence of the Muskingum County Court of Common Pleas which convicted Striblin of one count of inducing panic and one count of illegal possession of a firearm on a liquor permit premises. Plaintiff-appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 14, 2022, Striblin and his girlfriend entered the Lazy River Lounge in Muskingum County, Ohio, a Class D liquor establishment. Striblin entered the establishment with a Taurus pistol concealed on his person. Video of the evening in question shows Striblin ordering two drinks and taking a sip of one of them. Over the course of the evening, Striblin ordered five drinks.

{¶ 3} Shortly after 2:00 a.m., Striblin entered the men's restroom where he got into a fist fight with another patron, E.S. As two other patrons broke up the fight, Striblin drew his pistol and shot E.S. in the neck, causing injury. E.S. fled the bar.

{¶ 4} Following the shot, patrons were evacuated from the bar. Video surveillance showed Striblin outside the bar, initially with the Taurus in his hand, and then putting the weapon in the waistband of his pants.

{¶ 5} As a result of this incident, on September 21, 2022, the Muskingum County Grand Jury returned an indictment charging Striblin as follows:

Count one, inducing panic, a felony of the fourth degree with a three-year firearm specification;

Count two, possession of a firearm in a liquor permit premises, a felony of the third degree;

Count three, carrying a concealed weapon, a felony of the fourth degree;

Count four, having a weapon while under disability, a felony of the third degree;

Count five, tampering with evidence, a felony of the third degree and with a one-year firearm specification;

Count six, felonious assault, a felony of the second degree with a three-year firearm specification.

{¶ 6} Striblin entered pleas of not guilty and filed a motion to dismiss counts two, three and four of the indictment. Striblin's motion argued these counts should be dismissed on the basis of the United States Supreme Court's holding in *New York State Rifle and Pistol Association v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 142 S.Ct. (2022) (holding that firearm regulations are unconstitutional unless they are firmly rooted in our nation's history and tradition of gun regulations). Striblin argued the crimes alleged in counts two, three and four were therefore unconstitutional pursuant to the new standard set forth in *Bruen*. In response, the state argued the *Bruen* standards were met.

{¶ 7} On February 15, 2023, the trial court denied the motion.

{¶ 8} On February 16, 2023, following plea negotiations with the state, Striblin entered pleas of no contest to count one, inducing panic, and count two, illegal possession of a firearm in liquor permit premises. In exchange for his pleas, the state agreed to dismiss the three-year gun specification attached to count one, dismiss counts three through six, and to make no sentencing recommendation at the time of the plea. Striblin also agreed to withdraw all motions previously filed in this matter with the exception of his motion to dismiss on constitutional grounds.

{¶ 9}   The trial court accepted Striblin's no contest pleas, convicted him, and found him guilty of the crimes of inducing panic and illegal possession of a firearm in a liquor permit establishment. Striblin was subsequently sentenced to thirty days of local incarceration with credit for time served, and placed on community control for three years.

{¶ 10} Striblin timely filed an appeal and the matter is now before this court for consideration. He raises one assignment of error as follows:

I

{¶ 11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT IN DENYING DEFENDANT'S MOTIONS TO DISMISS COUNTS 2, 3, AND 4 OF THE INDICTMENT. R.C. 2923.121 ILLEGAL POSSESSION OF A FIREARM IN LIQUOR PERMIT PREMISES, R.C. 2923.12 CARRYING A CONCEALED WEAPON, AND R.C. 2929.13 WEAPON UNDER DISABILITY, ARE UNCONSTITUTIONAL, BOTH FACIALLY AND AS APPLIED TO DEFENDANT."

Dismissed Counts

{¶ 12} As an initial matter, we note Striblin's appeal challenges the trial court's denial of his motion to dismiss counts 2, 3, and 4. Counts 3 and 4, however, were dismissed by the state prior to Striblin's no contest pleas. We are therefore without jurisdiction to address Striblin's challenges to the dismissed counts. As the state notes, in order to have appellate standing, a party must be "aggrieved by" the order appealed from. *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935, ¶ 28, citing *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.*, 140 Ohio St. 160, 42 N.E.2d 758 (1942), syllabus. Because counts 3 and 4 were dismissed, Striblin has no "legally cognizable interest in the outcome." *Powell v.*

*McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). We therefore decline to consider Striblin's appeal challenging the constitutionality of the crimes for which he has not been convicted and sentenced.

## No Contest Plea

{¶ 13} Next, Striblin entered a no contest plea. Because under Crim. R. 11(B)(2) a plea of no contest is an admission to the facts in the indictment, we first turn to the indictment.

{¶ 14} Count two of the indictment, illegal possession of a firearm in a liquor permit premises, set forth the following facts:

> Elijah Striblin on or about August 14, 2022, at the county of Muskingum aforesaid, did recklessly possess a firearm in any room in which liquor is being dispensed in premises for which a D permit has been issued under Chapter 4303. of the Revised Code, to wit: Lazy River Lounge, Permit Number 62129850001, or in an open air area for which a permit of that nature has been issued in violation of Ohio Revised Code 2923.121(A), 2923.121(E), Illegal Possession of a Firearm in a Liquor Permit Premises, a felony of the third degree. FURTHERMORE, and the offender committed the violation by knowingly carrying or having the firearm concealed on the offender's person or concealed ready at hand.

{¶ 15} R.C. 2923.121(A) states:

No person shall possess a firearm in any room in which any person is consuming beer or intoxicating liquor in a premise for which a D permit has been issued under Chapter 4303. of the Revised Code or in an open-air arena for which a permit of that nature has been issued.

{¶ 16} R.C. 2923.121(E) states:

Whoever violates this section is guilty of illegal possession of a firearm in a liquor permit premises. Except as otherwise provided in this division, illegal possession of a firearm in a liquor permit premises is a felony of the fifth degree. If the offender commits the violation of this section by knowingly carrying or having the firearm concealed on the offender's person or concealed ready at hand, illegal possession of a firearm in a liquor permit premises is a felony of the third degree.

{¶ 17} As long as the indictment sets forth sufficient facts to sustain a conviction on the offense, the trial court may accept the plea. See *State ex rel. Masico*, 75 Ohio St.3d 422, 1996-Ohio-93, 662 N.E.2d 370.

{¶ 18} R.C. 2923.121(B)(1) provides an exception of sorts by rendering section (A) non-operational against certain classes of individuals (e.g. CHL holders and qualified

adults), except in the case of either intoxication or consumption of alcohol by those classes. In this matter, there was a factual and legal dispute between the state and defendant about whether he was a qualified adult, which carried through the change of plea hearing. At the change of plea hearing, the state recited that Striblin purchased alcohol at the bar. Transcript at 12. At oral argument, however, the state acknowledged it was not arguing that Striblin was intoxicated while in possession of a firearm. But no facts relating to R.C 2923.12(B)(1) were contained in the indictment. Although it seems an argument could be made that because of this language the State bears the burden to allege and then prove either fact, no such argument was made.

{¶ 19} Relevant here, therefore, is the holding in *Masico*: "Although the trial court retains discretion to consider a defendant's contention that the admitted facts do not constitute the charged offense, the defendant who pleads no contest waives the right to present additional affirmative factual allegations to prove that he is not guilty of the charged offense." *Id.* at 425. But what Striblin did do below is preserve his argument that the Second Amendment prohibits the government from criminalizing his conduct of carrying a gun into a Class D liquor establishment. Transcript of Plea 16-17.

Recent Second Amendment Authority

{¶ 20} In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022), the Supreme Court explicitly rejected a two-step test that had become common in the circuit courts of appeals. The Court also rejected any test that included a means-ends scrutiny. Id. at ¶17. Instead, the Supreme Court held the Second Amendment required a different analysis:

> [W]e hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961).

{¶ 21} Thus, the threshold question is whether Striblin's conduct is covered by the text of the Second Amendment and thus presumptively protected by the Second Amendment. We are required here to answer this question in the affirmative. The language is sweepingly inclusive because the federal constitution says the right to bear arms belongs to the people and "not an unspecified subset." *District of Columbia v. Heller*, 554 U.S. 570, 580, 128 S.Ct. 2783, 171 L.Ed.2d 637.

{¶ 22} Currently there is an open question of whether certain people fall outside of the scope of the "people" by benefit of their prior criminal conduct. See *State v. Jenkins* 5th Dist. Licking No. 2023CA00058, 2024-Ohio-1094, ¶64 (King, J, concurring). But no facts in the indictment and thus admitted by the no contest plea make that a relevant inquiry here. Moreover, any discussion by the parties below regarding prior offenses were regarding non-violent misdemeanors, and those offenses may not be sufficient to deny

Striblin the right to bear firearms. See *Range v. Attorney General United States of America*, 69 F.4th 96, 102 (3d Cir.2023). Finally, the State did not make an argument here that Striblin falls outside of the "people," and the doctrine of constitutional avoidance counsels against sua sponte raising it now. See *State ex rel. Taft v. Franklin Cty. Court of Common Pleas*, 81 Ohio St.3d 480, 481, 692 N.E.2d 560 (1998).

{¶ 23} The next step of the inquiry then is whether the State met its burden to show that the regulation of firearm possession by this statute is consistent with the "historical tradition of firearms regulation." *Bruen*, 142 S.Ct. 2111, 2126. To meet its burden showing that the statute is constitutional, the State leans exclusively on the recent Second Circuit case *Antonyuk v. Chiumento*, 89 F.4th 271 (4th Cir. 2023), particularly its exposition of the sensitive place doctrine. We do not find the Second Circuit's analysis persuasive in this regard.

{¶ 24} First, the Second Circuit leaned entirely on legislative examples from the Reconstruction era or later. In our view, the incorporation of the Second Amendment to the States through the Fourteenth Amendment carried with it the contextual understanding and public meaning of the text from Founding Era. If *Bruen* does not affirmatively require, then it strongly suggests the comparative analysis of examples of historical firearm regulations be rooted in the Founding Era or earlier. *Bruen*, 142 S.Ct. 2111, 2127, 2136. While the Supreme Court did not forbid considering Reconstruction Era laws, it repeatedly emphasized the far less weight they carried in any analysis. *Id.*, 2137.

{¶ 25} Further, in this period there is prolific discrimination against entire classes of people, with the south's Jim Crow regime being the most obvious and odious.

Examples from this time period, particularly from states and territories supporting slavery or the Confederacy, deserve special scrutiny. There is no evidence the Second Circuit undertook any such analysis, even though four of the seven legislative examples cited by the Second Circuit came from states or territories that permitted slavery within the previous two decades. Admittedly, the Supreme Court did not command this directly, but it stated that "not all history is created equal." *Id.* 2136. But if the regulation under consideration was in furtherance of denying the "people" their rights, then that must be considered.

{¶ 26} The refusal of the Second Circuit to meaningfully consider an earlier period certainly impacted its analysis.[1] When the Fifth Circuit considered the historical tradition of firearms regulation around the Founding Era, it was forced to find that "Founding-era statutes concerning guns and alcohol were few. They were also limited in scope and duration. The laws that did exist had two primary concerns: (1) the misuse of weapons while intoxicated and (2) the discipline of state militias." *United States v. Daniels*, 77 F.4th 337, (5th Cir.2023).

{¶ 27} Second, the Second Circuit relied heavily on analogies to disarming people who were intoxicated and creating gun free zones in crowded places. *Antonyuk*, 89 F. 4th at 368. We do not view the Second Circuit's analysis as comporting with the framework required under *Bruen*. The Supreme Court said that to carry its burden, the state must "identify a well-established and representative historical analogue." *Bruen*, 142 S.Ct. 2111, 2133. The Court also stated the challenged regulation had to be neither a "twin"

---

[1] Neither the Statute of Northampton or the two colonial statutes considered by the Second Circuit truly support its conclusion.

nor a "dead ringer" to the "representative historical analogue." *Id.* So while some slack is permitted in the historical analysis, it must be a close match, i.e. "representative."

{¶ 28} In order to sustain New York's law prohibiting the possession of firearms in liquor-licensed establishments, the Second Circuit leaned nearly exclusively on historical examples of disarming intoxicated people. There is an obvious distinction between consumption and intoxication, and that distinction is ignored in Second Circuit's analysis. Although it attempted to discredit the District Court's analysis finding such a distinction and finding the law unconstitutional, we are not persuaded by the appellate court. See *Antonyuk*, 89 F. 4th at 364-365. For example, the court makes no distinction between someone potentially passing through a restricted area with a firearm to get some place else, such as a table in restaurant and an intoxicated person.

{¶ 29} The court then appears to give a wink to the reader about the ill fit of this analogy and the dearth of legislative prohibitions about carrying a firearm into a liquor establishment by stating "When paired with the crowded space analogues, even absent the historical statutes prohibiting carriage in liquor-serving establishments, the analogues prohibiting intoxicated persons from carrying or purchasing firearms justify § 265.01-e(2)(o)." *Id.* At the bottom, then, was really the Second Circuit's conclusion that crowded places could be freely regulated.

{¶ 30} In our view, this analysis suffers from the same infirmities as its analysis regarding liquor-serving establishments. Moreover, it conflates discrete areas of legislation, such as urban park regulation, into a general theory of "crowded spaces." *Id.* 360-61. The result then is the Second Circuit is reinforcing its weakly supported analogies from prohibiting public intoxication to prohibiting public consumption by using another set

of analogies to deduce a conclusion (firearms can be restricted in crowded public forums) that doesn't strictly follow from its premises. *Id.*

{¶ 31} Further, when examining liquor-serving establishments, the Second Circuit dropped the public forum qualification, instead just considering crowded spaces. Even if the historical evidence supported limiting firearms in "crowded public forums," we are not yet convinced that private premises open to the public are always analogous to publicly owned and maintained spaces for Second Amendment purposes. The Second Circuit makes no effort to wrestle with this or even note the apparent shift in its analysis. Even conceding public intoxication falls outside the Second Amendment, the Second Circuit did not point to any significant text, history, or tradition of regulating possession of firearms in alcohol-serving establishments. In this regard, the District Court's analysis was much better than the Second Circuit's.

{¶ 32} Precedent from the Supreme Court of Ohio suggests that intoxication is a narrow prohibition, rather than one from which a court can analogize broad prohibitions. The Court addressed the criminal liability for the use of firearms while intoxicated in *State v. Weber*, 163 Ohio St.3d 125, 2020-Ohio-6832, 168 N.E.3d 468. Although much of the majority opinion and Justice DeWine's concurrence addresses the issue of over consumption, i.e. intoxication, both opinions make repeated efforts to strictly link intoxication and possession of a firearm. *Id.* ¶ 57. ("you're allowed to be drunk and you have a right to handle a firearm—you just can't do both at the same time [.]") DeWine, J, concurring. A key aspect of Justice DeWine's concurrence was intoxication was a constitutional reason for barring possession of firearms because they posed a "present danger to others." *Id.* ¶ 96.

{¶ 33} Aside from our issues with the Second Circuit's analysis, a review of *United States* v. *Daniels* also further undermines the Second Circuit's conclusion. The Fifth Circuit in *Daniels* surveyed the history of prohibiting possession of firearms while intoxicated, and found these laws were limited in scope and duration. *United States v. Daniels*, 77 F.4th 337, 345 (5th Cir.2023). Moreover, it concluded "Given the prevalence of drinking at the Founding, that handful of laws puts the government on shaky footing. The government has failed to identify any relevant tradition at the Founding of disarming ordinary citizens who consumed alcohol." *Id*, 346. When it evaluated similar historical evidence from the Reconstruction Era, it concluded "And even if late-century practice sheds some dim light on Founding era understandings, the most the Reconstruction-era regulations support is a ban on gun possession while an individual is presently under the influence." *Id*. 348.

{¶ 34} In contrast to the Second Circuit's conclusion, the historical evidence does not appear to strongly support preventing someone from carrying a firearm into a place merely because other people are consuming alcohol.

{¶ 35} Finally, we believe the sensitive place doctrine requires an analysis of more discreet locations than the broadly defined locations used by the Second Circuit. Part of the holding from *Bruen*, was to consider the historical analogues and see if the new regulations would be permissible under historical precedence. So, in our view, the Second Circuit was far too broad in this exercise. For example, *Antonyuk* also assumed that every instance of on-premise alcohol consumption could be constitutionally regulated. We are not so certain.

{¶ 36} Under Ohio's licensing scheme, a number of "class D permit" facilities are quite unlike bars and pubs, including wine tasting (R.C. 4303.184), shopping malls (R.C. 4303.181(B), certain botanical gardens (R.C. 4303.181(K)), community entertainment districts (R.C. 4303.181(J)), revitalization district (R.C. 4303.181(L)), and museums, theatres, and community centers (R.C. 4303.181(H)). An obvious difference is the consumption in alcohol in these places is largely incidental to other leisure activities. And at least to some degree, the amount of alcohol consumable is either directly or indirectly limited. Thus, it is not evident to us that the sensitive places doctrine would permit the prohibition of firearms in every location where alcohol is consumed. The only common aspect of these varied facilities is they allow public alcohol consumption. Thus, we cannot conclude that the State met its burden to show class D permit facilities are all sensitive places within the historical tradition of firearms regulation.

2923.121(A)

{¶ 37} Now we return to 2923.121(A), which states that "No person shall possess a firearm in any room in which any person is consuming beer or intoxicating liquor in a premises for which a D permit has been issued * * *."

{¶ 38} We conclude that the state did not meet its burden to show this regulation is consistent with the historical tradition of firearms regulation. Because of this, we uphold Striblin's constitutional challenge against R.C. 2923.121(A) and reverse his conviction on Count two.

By King, J.,

Baldwin, J. concur and

Wise, P.J. dissents.

*Wise, J., dissenting opinion*

{¶39}  I respectfully dissent from the majority opinion reversing and vacating the conviction of appellant on Count Two of the indictment.

{¶40}  Appellant's conviction stems from the events that took place on August 14, 2022 when he entered the Lazy River Lounge, a Class D liquor establishment, ordered two Crown Apple and Cranberry drinks and was seen on video taking a drink.  Striblin then entered the men's restroom, confronted a male patron, pulled a Taurus pistol from his waistband and shot the male patron causing injury.

{¶41}  At issue here, appellant was charged by indictment, pleaded no contest and was found guilty of a violation of R. C.2923.121(A).  (possessing a firearm in a class D liquor establishment).

{¶42}  On appeal, appellant challenged his conviction as unconstitutional under the Second Amendment of the United States Constitution, both on its face and as applied to him.  Applying the historical tradition test set forth by the United States Supreme Court in *New York State Rifle and Pistol Association v. Bruen,* 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022), the majority of this Court found R.C. 2923.121(A) inconsistent with the historical tradition of firearms regulations and upheld Striblin's constitutional challenge.

{¶43}  I do not read the *Bruen* decision as prohibiting the Ohio Legislature from regulating the possessing of firearms in a Class D liquor establishment to persons who have some familiarity with firearms through training and concealed carry licensing.  The restriction imposed by R.C. 2923.121(A) does not apply to any person who possesses a valid concealed carry license or who is an active member of the armed forces carrying a

valid military identification. Other exceptions apply for law enforcement personnel, R.C. 2923.121 (B)(1). The concurring opinions in *B*ruen make clear that nothing in the Opinion prohibits states from imposing licensing requirements for carrying a handgun.

> . . . [T]he Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense. In particular, the Court's decision does not affect the existing licensing regimes - known as 'shall-issue' regimes - that are employed in 43 states." (Justice Kavanaugh with whom Chief Justice joins concurring). 142 S.Ct. 2161. ... "Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so." 142 S.Ct. 2162.

**{¶44}** Ohio is a "shall-issue" state. Unlike the New York statute at issue in B*ruen,* a person does not need to prove that "proper cause exists" to carry a concealed pistol or revolver. "As long as you meet the law's requirements, the sheriff must issue a concealed-handgun license within 45 days of receiving your properly completed application." *Ohio's Concealed Carry Laws, Office of the Attorney General, June, 2022,* at 12, available at *www.OhioAttorneyGeneral.gov.*

**{¶45}** Accordingly, R.C. 2929.121 meets the licensing restrictions approved in *B*ruen. Ohio, a "shall-issue" state, is permitted to require a person desiring to carry a concealed weapon into a liquor establishment to demonstrate that she or he is a law-abiding citizen who has undergone the background check, fingerprinting and firearms safety course to ensure that those possessing firearms are responsible citizens.

{¶46}  It is a minimal burden on the Second Amendment to limit the carrying of a firearm into a liquor establishment to those individuals who have demonstrated training and experience in firearms carrying.

{¶47}  Nothing in *Bruen* condemns that restriction.

{¶48}  The holding of the Ohio Supreme Court in *State v. Weber,* 163 Ohio St.3d 125, 2020-Ohio-6832, 168 N.E.3d 468, cert. denied 142 S.Ct. 61 (2021) is instructive. In *Weber,* the Ohio Supreme Court considered the constitutionality of Ohio's statute prohibiting the carrying of a firearm while intoxicated, a violation of R.C. 2923.15. Defendant was in his home intoxicated holding a shotgun when his wife called 911. After a bench trial where he was found guilty, he appealed arguing that the statute was unconstitutional as applied to him and violated his Second Amendment right to bear arms in his home.

{¶49}  The Tenth District Court of Appeals affirmed his conviction and sentence. On review, the Ohio Supreme Court agreed and affirmed his conviction and sentence.

{¶50}  While *Weber* was decided before *Bruen,* Justice DeWine, in his concurring opinion, applied the analytical framework of historical tradition espoused in *Bruen* and *Heller.*[2]

> Thus, I would apply the analytical framework endorsed by the *Heller* Court and decide Weber's claim that his Second Amendment rights have been violated based upon the text, history and tradition of the Second Amendment.  *Id.* at ¶ 71.

---

[2] *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637.

**{¶51}** The Court concluded that the statute regulating intoxicated persons in the home carrying firearms fell outside the scope of the Second Amendment protection.

**{¶52}** The Court discussed the history of regulations restricting the mixing of firearms and alcohol and concluded that firearms and alcohol consumption was "probably the most regulated subject in the early republic." *Id.* at ¶ 105. In upholding the constitutionality of R.C. 2923.15, the *Weber* Court cited the writings of the Remington Arms, a gun manufacturer in business for over 200 years. "Alcohol, drugs and guns are a deadly combination. ... A staggering percentage of the shooting accidents that occur every year involve alcohol or drugs." *Id.* at ¶ 37.[3]

**{¶53}** Ohio has a legitimate interest in protecting its citizens from the harm caused by a combination of firearms and alcohol. *Id.* at ¶ 32, ¶ 33.

**{¶54}** R.C. 2923.121 is narrowly tailored to address public safety. It criminalizes firearm possession in a Class D liquor establishment only when an individual lacks the training or licensing to demonstrate safe use of a firearm.

**{¶55}** R.C. 2923.121 is not unconstitutional on its face or as applied to Striblin. Striblin (1) entered a Class D liquor establishment in possession of a concealed firearm – a Taurus pistol; (2) he did not possess a concealed handgun license, (3) he was physically handling his firearm, (4) he bought and consumed liquor and (5) shot another patron while in the restroom. In my opinion, he suffered no deprivation of his constitutional right to bear arms.

---

[3] See *State v. Weber, Amicus Brief of the Cities of Columbus, Cincinnati, Akron, Dayton, Lima and Toledo in Support of Appellees and Affirmance,* Case No. 2019-05544 at 12, available at www.supremecourtofohio.org. for citations to the centuries long history of laws restricting the carrying of firearms in alcohol related settings.

{¶56} I dissent from the majority and would affirm appellant's conviction and sentence on Count Two of the indictment.